**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| **IN RE: HEALTHEC LLC DATA BREACH LITIGATION** | Case No. 2:24-cv-26 (SDA)<br><br>**OPINION ON MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Dated: June 6, 2025<br><br>Hon. Stacey D. Adams |

**STACEY D. ADAMS, United States Magistrate Judge**

This matter comes before the Court on a Motion for Preliminary Approval of a Class Action Settlement filed by lead plaintiffs Allan Bishop, Caroline Cappas, Jessica Fenn, Keith Fielder, Joni Fielder, Gregory Leeb, and Mindy Markowitz, (collectively, "Plaintiffs") on March 17, 2025. (ECF No. 168) (the "Motion")). Defendants HealthEC, LLC ("HealthEC"), Community Health Care Systems ("Community"), Corewell Health d/b/a Corewell ("Corewell"), MD Valuecare, LLC ("MD Valuecare"), and Oakwood Accountable Care Organization, LLC d/b/a Beaumont ACO ("Beaumont")[1] (collectively, "Defendants") do not oppose the Motion. For the reasons stated herein, the Motion is **GRANTED**.

**FACTUAL BACKGROUND/RELEVANT PROCEDURAL HISTORY**[2]

HealthEC is a business that sells data management and analytics services to healthcare providers, including the Provider Defendants in this case. (Am. Compl. ¶ 2-3). Under those

---

[1] Hereinafter, Community, Corewell, MC Valuecare, and Beaumont collectively will be referred to as the "Provider Defendants."

[2] The Court gleans the following facts from the Consolidated Amended Complaint (ECF No. 115 ("Am. Compl.")).

agreements, the Provider Defendants share patients' highly sensitive personal health information and other data with HealthEC. (*Id.* ¶ 3). Defendants store a litany of sensitive personal identifiable information ("PII") and protected health information ("PHI") about current and former patients and employees. (*Id.* ¶ 4). Plaintiffs allege Defendants failed to protect this data when a hacker infiltrated HealthEC's insufficiently protected computer systems causing a data breach and exposing the PII and PHI of over 4,600,000 patients. (the "Data Breach") (*Id.*). Plaintiffs allege this occurred because HealthEC failed to adequately train their employees on cybersecurity and failed to maintain reasonable safeguards or protocols to protect the information. (*Id.* ¶ 6). Further, Plaintiffs claim that HealthEC knew their systems were vulnerable to attack and prioritized profits over its obligation to protect patients' data. (*Id.* ¶ 7). Plaintiffs further claim that the Provider Defendants are also responsible for the Data Breach because they have a non-delegable duty to protect their patients' information. (*Id.* ¶ 8). Defendants discovered the Data Breach in July 2023, but waited until December 2023 to inform impacted patients. (*Id.* ¶ 10).

The initial complaint was filed by Plaintiff Victoria Lempinen on January 3, 2024. (ECF No. 1). Thereafter, separate lawsuits related to the Data Breach were consolidated into the instant action.[3] (*See* ECF Nos. 6, 9, 15,17, 79). HealthEC, Corewell, and Beaumont filed a Motion to Dismiss the consolidated class action complaint on June 14, 2025. (ECF No. 128). During a July 10, 2025 status conference, the undersigned administratively terminated the Motion to Dismiss without prejudice so that the parties could attend mediation. (ECF No. 141). The parties attended mediation with Hon. Joel Schneider (Ret.). (ECF No. 168-3 ("Cecchi Decl.") ¶ 4). While the parties did not resolve the matter at mediation, they continued to negotiate for several months and

---

[3] The following matters have been consolidated into the instant action: 2:24-cv-00026, 2:24-cv-00027, 2:24-cv-00031, 2:24-cv-00036, 2:24-cv-00087, 2:24-cv-00096, 2:24-cv-00146, 2:24-cv-00148, 2:24-cv-00153, 2:24-cv-00172, 2:24-cv-00232, 2:24-cv-00258, 2:24-cv-00281, 2:24-cv-00300, 2:24-cv-00347, 2:24-cv-00407, 2:24-cv-00312, 2:24-cv-00433, 2:24-cv-00907 (*See* ECF Nos. 6, 9, 15,17, 79).

ultimately reached a settlement in principle on or about November 19, 2024. (*Id.*; ECF No. 155). The instant Motion was filed on March 17, 2025.

**THE PROPOSED SETTLEMENT**

**The Proposed Settlement Class**

The Settlement Class is defined as "the approximately 1.67 million individuals . . . that were patients of [the Provider Defendants] whose personal information and/or protected health information was compromised in the [Data Breach] announced by HealthEC in December 2023."[4] (ECF No. 168-4 ("Settlement Agreement") ¶ 1.33).

**The Settlement**

The settlement provides that $5,482,500 shall be severally funded by Defendants into an escrow account (hereinafter, "Common Fund")[5] (*Id.* ¶ 1.9). The Common Fund will be used to pay, in the following order: (1) notice and settlement administration costs, including expenses, taxes, and tax-related expenses related to the escrow account (estimated to be approximately $100,000 plus the claims administrator fee); (2) service awards approved by the Court ($2,500

---

[4] The Settlement Class specifically excludes: (i) each of the Defendants and their respective officers and directors; (ii) the Judge and/or Magistrate Judge assigned to evaluate the fairness of this settlement; and (iii) any other Person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding, or abetting the Data Breach or who pleads *nolo contender* to any such charge. (*Id.* ¶ 1.33).

[5] Payment to the Common Fund is to be accomplished as follows: $333,250.00 by HealthEC within 14 days of the entry of the Preliminary Approval Order; (2) $2,999,250.00 by Health EC within 30 days of the entry of the Preliminary Approval Order; (3) $130,000.00) by Corewell within 14 days of the entry of the Preliminary Approval Order; (4) $1,170,000.00 by Corewell within 30 days of the entry of the Preliminary Approval Order; (5) $35,000.00 by Beaumont within 14 days of the entry of the Preliminary Approval Order; (6) $315,000.00 by Beaumont within 30 days of the entry of the Preliminary Approval Order; (7) $25,000.00 by MD Valuecare within 14 days of the entry of the Preliminary Approval Order; (8) $225,000.00 by MD Valuecare within 30 days of the entry of the Preliminary Approval Order; (9) $25,000.00 by Community Health within 14 days of the entry of the Preliminary Approval Order; and (10) $225,000.00 by Community Health within 30 days of the entry of the Preliminary Approval Order. (*Id.* ¶ 2.1).

each x 7 lead Plaintiffs = $17,500); (3) attorney's fees (up to 34% of the settlement fund, or $1,864,050) and expenses, including the costs associated with the procurement of Medical Shield Complete ("MSC") credit monitoring ($500,000); and then (4) settlement benefits for the settlement class members. (*Id.* ¶ 2.2; ECF No. 168-5 ("Settlement Benefits Plan") ¶ 2). The Common Fund is non-reversionary – as of the Effective Date of the Agreement, Defendants' rights in the Common Fund are extinguished. (Settlement Agreement ¶ 2.3). The Common Fund is deemed to be in the custody of the Court and remains subject to its jurisdiction until distribution. (*Id.* ¶ 2.5).

Settlement class members who file a claim form are eligible to receive: (i) their out-of-pocket losses; (ii) lost time at the rate of $25 per hour for up to 10 hours; or (iii) an alternate cash payment of $25 ($50 in California). (Cecchi Decl., Exh. 2; Settlement Agreement. Exh. B). Settlement class members are also eligible for three years of access to MSC at no cost. (ECF No. 168-4, "Long Form Notice," ¶ 8). MSC will provide: (i) medical and healthcare data monitoring; (ii) monitoring of class members' credit files at Equifax, Experian, and TransUnion; (iii) dark web monitoring of class members' personal information; (iv) security freeze capabilities; and (v) $1 million identity theft insurance policy with no deductible. (*Id.*).

The settlement provides a procedure for class members to opt-out by submitting a written notice to the Settlement Administrator. (*Id.* ¶ 4.1). It also allows class members to object to the settlement. (*Id.* ¶ 5.1). In the event more than 1,000 class members opt-out, Defendants have the right to terminate the Settlement Agreement in its entirety. (*Id.* ¶ 4.4).

## GOVERNING LAW AND ANALYSIS

**I.    Preliminary Approval of the Class Action Settlement**

Approval of a class action settlement is a two-step process: (1) preliminary approval, and (2) a subsequent fairness hearing. *Easterday v. USPack Logistics*, No. 15-cv-7559 (RBK) (AMD),

2023 WL 4398491, at *5 (D.N.J. July 6, 2023). At the preliminary approval stage, the parties submit the proposed settlement to the Court for a fairness evaluation. *Id.* If the proposed settlement is preliminarily acceptable, the Court directs the notice to be provided to all class members who would be bound by the settlement for an opportunity to be heard, object, and/or opt out. *Id.* (citing Fed. R. Civ. P. 23(c)(2), (e)(1), (e)(5)). "Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies, and the settlement falls within the range of reason." *Zimmerman v. Zwicker & Assocs., P.C.*, No. 09-cv-3905 (RMB) (JS), 2011 WL 65912, at *2 (D.N.J. Jan. 10, 2011). At this stage, "the court must determine whether the proposed settlement falls 'within the range of fairness, reasonableness and adequacy' required by Rule 23(e)." *Easterday*, 2023 WL 4398491, at *2 (quoting *In re Amino Acid Lysine Antitrust Litig.*, No. 95-cv-7679, 1996 WL 197671, at *4 (N.D. Ill. Apr. 22, 1996)).

A proposed settlement falls within the range of possible approval if there is a conceivable basis the standard for final approval would be satisfied. *Id.* (citing *In re Nat'l Football League Players' Concussion Inj. Litig.*, 301 F.R.D. 191, 198 (E.D. Pa. 2014)). Generally, preliminary approval should be granted "[w]here the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, [and] does not improperly grant preferential treatment to class representatives or segments of the class[.]" *Id.* at 14 (quoting *In re Nasdaq Mkt.-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997)). A settlement is presumed fair when it results from "arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Id.* (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005)). However, preliminary approval is not simply a "rubber stamp" of the agreement. *In re Nat'l Football League Players' Concussion Inj. Litig.*, 961 F. Supp. 2d 708, 714 (E.D. Pa. 2014) (quoting *In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 330, 338 (N.D.

Ohio 2001)); *see also Majdipour v. Jaguar Land Rover North America, LLC*, 12-cv-7849 (WHW)
(CLW), 2018 WL 1617696, at *6 (D.N.J. Apr. 3, 2018) (denying preliminary approval where there
was a "significant difference between the compensation available under the [agreement] and the
actual cost of repair without some evidence of why it is appropriate."); *Zimmerman*, 2011 WL
65912, at *4-5 (denying preliminary approval where the class definition was "too indefinite and
overbroad, did not treat the class fairly and foreclosed "hundreds of thousands of consumers from
pursuing their rights… in exchange for nothing.").

### A.    Requirements for Class Certification under Fed. R. Civ. P. 23

The parties request that the class be certified for settlement purposes only. (*See* ECF No.
168-1, "Br.," at 23-24. The Third Circuit has observed that "Rule 23 is designed to assure that
courts will identify the common interests of class members and evaluate the named plaintiffs' and
counsel's ability to fairly and adequately protect class interests." *In re Comm. Bank of N. Va.*, 622
F.3d 275, 291 (3d Cir. 2010) (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod.
Liab. Litig.*, 55 F.3d 768, 799 (3d Cir. 1995) (alterations omitted). "The requirements of [Rule 23]
(a) and (b) are designed to ensure that a proposed class has 'sufficient unity so that absent class
members can fairly be bound by decisions of class representatives.'" *In re Prudential Ins. Co.*, 148
F.3d 283, 309 (3d Cir. 1998) (quoting *Amchem Prods. v. Windsor*, 521 U.S. 591, 621 (1997)).

### 1.    Fed. R. Civ. P. 23(a) Requirements

The requirements of Rule 23(a) must be met whether certification is sought for the purpose
of proceeding with litigation or, as here, for settlement. *See Rodriguez v. Nat'l City Bank*, 726 F.3d
372, 379 (3d Cir. 2013). Class certification is appropriate where the prospective class establishes:
(1) the class is so numerous that joinder of all members is impracticable (numerosity); (2) there
are questions of law or fact common to the class (commonality); (3) the claims or defenses of the
representative parties are typical of the claims or defenses of the class (typicality); (4) and the

representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a); *In re Nat'l Football League*, 821 F.3d at 426. All requirements of Fed. R. Civ. P. 23 must be proven by a preponderance of the evidence. *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 320 (3d Cir. 2008).

### i.    Numerosity

Generally, the numerosity requirement is satisfied if the named plaintiff demonstrates the potential number of plaintiffs exceeds 40. *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 595 (3d Cir. 2012) (quoting *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001)). Fed. R. Civ. P. 23(a) requires an examination of the specific facts in each case. *Gen. Tel. Co. of the Nw. v. EEOC*, 446 U.S. 318, 330 (1980). Here, there are approximately 1,600,000 class members. (Br. at 17). Therefore, the numerosity requirement is easily satisfied.

### ii.    Commonality

Fed. R. Civ. P. 23(a)(2) "requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" and their claims must depend on a common contention of such a nature that it is capable of class-wide resolution. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-50 (2011) (quoting *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). Being capable of class-wide resolution "means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*. at 350.

Here, commonality is easily satisfied, as all class members have suffered the same injury – their personal information was stolen by a hacker in connection with the Data Breach. Courts in this Circuit have routinely found commonality in data breach class actions. *See Holden v. Guardian Analytics, Inc.*, No. 23-cv-2115 (WJM), 2024 WL 2845392, at *7 (D.N.J. June 5, 2024) (commonality requirement satisfied in data breach class action because "the dispute involves common issues relating to the alleged failure to adequately protect PII violations of federal

securities laws leading to the [breach], the resulting harm to the [c]lass, and the appropriate measure of [c]lass damages"); *In re Onix Grp., LLC Data Breach Litig.*, 23-cv-2288 (KSM), 2024 WL 5107594, at *5 (E.D. Pa. Dec. 13, 2024) (commonality met because class members were victims of the same data breach and there were common questions as to how the data breach occurred, whether defendant had a duty to protect the class members, and whether the class members were harmed by the breach); *Corra v. ACTS Ret. Svcs., Inc.*, No. 22-cv-2917 (GKP), 2024 WL 22075, at *3 (E.D. Pa. Jan. 2, 2024) (finding commonality satisfied in a data breach class action on a motion for preliminary approval where "every single member of the proposed class was a victim" of the alleged data breach, and there were common questions including whether defendant had a duty to protect the information and whether defendant's employees and customers were harmed by the breach.). Like these cases, here, commonality is satisfied because all class members were victims of the same data breach and common questions prevail as to Defendants' liability for that breach.

### iii.    Typicality

The typicality requirement "ensures the interests of the class and the class representatives are aligned 'so that the latter will work to benefit the entire class through the pursuit of their own goals.'" *Newton v. Merrill Lynch, Pierce, Fenner, & Smith, Inc.*, 259 F.3d 154, 182-83 (3d Cir. 2001) (quoting *Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 141 (3d Cir. 1998)). The typicality requirement "does not require that all putative class members share identical claims." *Johnston v. HBO Film Mgmt., Inc.*, 265 F.3d 178, 184 (3d Cir. 2001). Instead, "so long as 'the claims of the named plaintiffs and putative class members involve the same conduct by the defendant, typicality is established regardless of factual differences.'" *Id.* (internal citations omitted). "Even relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories." *Baby Neal for & by Kanter v. Casey*, 43 F.3d 48, 51 (3d Cir.

1994). The Third Circuit has set a "'low threshold' for typicality," and courts seek to "ensure[] the interests of the class and the class representatives are aligned 'so that the latter will work to benefit the entire class through the pursuit of their own goals.'" *In re Nat'l Football League*, 821 F.3d at 428 (quoting *Newton*, 259 F.3d at 182-83).

Here, Plaintiffs' claims are typical of those of the Settlement Class because they allege they were all harmed when HealthEC experienced a Data Breach and their PII and PHI were stolen. *See Holden*, 2024 WL 2845392, at *8 (typicality met where plaintiffs and class members were injured by the same common course of conduct, the failure to protect PII resulting in a data breach).

### iv.      Adequacy of Representation

This fourth factor tests the qualifications of class counsel and representatives, and "aims to root out conflicts of interests within the class to ensure that all class members are fairly represented in the negotiations." *In re Nat'l Football League*, 821 F.3d at 428. The Court must assess the qualifications of class counsel and representatives, and also "root out conflicts of interests within the class to ensure that all class members are fairly represented in the negotiations." *Id.* at 428.

### a.      Class Representatives

Class representatives must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Class representatives must represent a class "capably and diligently." *In re Nat'l Football League*, 821 F.3d at 430. A "minimal degree of knowledge" about the litigation is adequate. *Id.* The Court must look toward the proposed class representatives to determine whether there is any conflict between their claims and those asserted on behalf of the class, and their ability and incentive to vigorously represent the interests of the class. *See Gotthelf v. Toyota Motor Sales, U.S.A., Inc.*, 525 F. App'x 94, 101 (3d Cir. 2013).

Here, Plaintiffs seek to appoint seven class representatives. These individuals were harmed in the same way as the other class members when their information was stolen by a hacker that

accessed the data stored by HealthEC. The class representatives consulted counsel, collected documents for litigation, and reviewed the pleadings. There are no identifiable conflicts between the class representative's claims and those of the class at large, and they have ably represented settlement class members thus far, as evidenced by this settlement. Accordingly, the Court finds the proposed class representatives to be adequate.

### b.    Class Counsel

The Court evaluates class counsel under the Rule 23(g) factors, which include the work counsel has performed in identifying and investigating potential claims; counsel's experience handling class actions, complex litigation, and the types of claims asserted; counsel's knowledge of applicable law; and the resources counsel will commit to the representation. Fed. R. Civ. P. 23(g)(1)(A). The Court must weigh three criteria, whether class counsel: (1) possessed adequate experience; (2) vigorously prosecuted the action; and (3) acted at arm's length from the Defendant. *Beltran v. SOS Ltd.*, No. 21-cv-7454 (RBK) (EAP), 2023 WL 319895, at *10 (D.N.J. Jan. 3, 2023) (quoting *In re Gen. Motors Corp.*, 55 F.3d at 801). Here, Plaintiff proposes that Carella, Byrne, Cecchi, Brody, & Agnello, P.C. ("Carella Byrne") and Norman Siegel ("Norman Siegel") (together, "Class Counsel") serve as class counsel.

First, the Court must assess whether Class Counsel possess adequate experience. In terms of experience, several courts in this District have recognized that Carella Bryne and Norman Siegel are highly experienced class counsel. *See, e.g., Thomas v. Gerber Prods. Co.*, Nos. 12-cv-835, 12-cv-1098, 12-cv-1149, 12-cv-1283, 12-cv-1878 (JLL), 2012 WL 1606627, at *2 (D.N.J. May 8, 2012) (finding Carella Byrne has "extensive experience in class action litigation dealing with consumer fraud"); *City of Warren Gen. Emps.' Ret. Sys. v. Celgene Corp., Inc.*, No. 18-cv-4772 (JMV) (JBC), 2018 WL 4629570, at *2 (D.N.J. Sept. 26, 2018) (holding Carella Byrne has "substantial experience litigating class actions"); *In re Eros Int'l PLC Sec. Litig.*, No. 19-cv-14125

(ES) (JSA), 2023 WL 8527135, at *2 (D.N.J. Nov. 28, 2023) (finding Carella Byrne was adequate counsel in securities class action); *Clemens v. ExecuPharm, Inc.,* No. 20-cv-3383 (GJP), 2024 WL 4530310 at *2 (E.D. Pa. Oct. 1, 2024) (finding Norman Siegel to be "highly experienced in complex class actions and data breach litigation"). Mr. Cecchi, of Carella Byrne, held several leadership positions in many of the nation's most complex consumer class actions, including complex multidistrict litigation. (ECF No. 168-7 at 2). Norman Siegel has served as lead counsel in several of the largest data breach actions in the country, including litigation where 148 million Americans had their data comprised in a data breach. (ECF No. 168-3, at 3). He has worked in this area of law for 25 years, recovering over $3 billion in judgments and settlements. (*Id.* at 4). Class Counsel is well-versed in the applicable law. Accordingly, the Court finds the Fed. R. Civ. P. 23(g) factors to be satisfied.

Next, the Court analyzes whether proposed Class Counsel vigorously prosecuted the action. Here, Class Counsel performed significant work in identifying and investigating the claims, and successfully prosecuted this action to obtain a favorable settlement for their clients. The parties mediated with the Honorable Joel Schneider (ret.) on September 10, 2024. (Cecchi Decl., ¶ 4; ECF No.149). While the parties did not reach an agreement at mediation, they continued to engage in discussions and ultimately reached an agreement after months of additional negotiation. (*Id.*). Class Counsel worked diligently over several additional months to finalize the terms of the settlement agreement and drafted this motion (ECF Nos. 150, 152, 155, 159, 161, 163, 165, 167).

Finally, the Court must assess whether the settlement was brought about as the result of an arms' length negotiation. Here, the parties participated in a full day mediation with a private mediator who is a retired judge, and then continued negotiations for several months. There is

nothing to suggest this was anything other than an arm's length negotiation.  Accordingly, the Court finds Class Counsel is sufficient.

### 2. Fed. Civ. P. 23(b) Requirements

The parties must also demonstrate the proposed class satisfies "at least one of the three requirements listed in Rule 23(b)." *Beltran*, 2023 WL 319895, at *12 (citing *Wal-Mart Stores, Inc.*, 564 U.S. at 345). Here, Plaintiff relies on Fed. R. Civ. P. 23(b)(2), which applies when "questions of law or fact common to class members predominate over any questions affecting only individual members," and when "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed R. Civ. P. 23(b)(3).

### i. Predominance

The predominance inquiry tests "whether the defendant's conduct was common as to all of the class members, and whether all of the class members were harmed by the defendant's conduct." *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 298 (3d Cir. 2011). "Predominance probes whether the proposed class is sufficiently cohesive to warrant adjudication by representation." *McGowan v. CFG Health Network, LLC*, No. 22-cv-2770 (ZNQ) (RLS), 2024 WL 1340329, at *16 (D.N.J. Mar. 28, 2024) (internal citations omitted). "The focus of the predominance inquiry is on liability, not damages." *Smith v. Suprema Specialties*, No. 02-cv-168 (WHW), 2007 WL 1217980, at *9 (D.N.J. Apr. 23, 2007). Here, this requirement is easily satisfied as all class members were harmed by the same alleged conduct by Defendants – their PII and PHI were comprised in the Data Breach. Liability is premised upon the same theory – that Defendants breached their duty by failing to maintain adequate safeguards to protect this data, failing to adequately train their employees on cybersecurity and knowingly leaving their systems vulnerable to attack. Thus, the predominance requirement is satisfied.

### ii. Superiority

The superiority requirement asks the district court 'to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication.'" *In re Cmty. Bank of N. Va. & Guar. Nat'l Bank of Tallahassee Second Mortg. Loan Litig.*, 418 F.3d 277, 309 (3d Cir. 2005) (citing *Georgine v. Amchem Prods., Inc.*, 83 F.3d 610, 632 (3d Cir. 1996), *aff'd*, 521 U.S. 591, 138 (1997)). Pertinent matters in this inquiry include:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; [and]
>
> (D) the difficulties likely to be encountered in the management of a class action.

Fed. R. Civ. P. 23(b)(3). When, as here, certification of the class is solely for the purpose of settlement, a showing of manageability for trial is not required. *Somogyi v. Freedom Mortg. Corp.*, 495 F. Supp. 3d 337, 347 (D.N.J. 2020).

Here, a class action is a superior method to individual adjudication because each individual claim has a relatively low monetary value and there are potentially over 1.6 million class members. Class members might not be inclined to pursue their claims individually given the relatively small dollar value. Further, the cost of litigation on an individual basis would likely exceed the value of any one claim. A class action therefore provides a superior means of obtaining a more efficient recovery for more class members. The Court is therefore satisfied that a class action is the superior method of adjudication in this case.

**B.    Whether the Settlement is Fair, Reasonable, and Adequate under Fed. R. Civ. P. 23(e)**

Having found that the requirements for class certification are satisfied, the Court next turns

an analysis of the proposed settlement. The Court may only approve the settlement after a hearing

and only upon a finding that it is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2). This

includes consideration of whether: the class representatives and counsel have adequately

represented the class; the proposal was negotiated at arm's length; the relief provided for the class

is adequate; and the proposal treats class members equitably relative to each other. *Id.* In

determining whether the relief is adequate, the Court must consider: the costs, risks, and delay of

trial and appeal; the effectiveness of any proposed method of distributing relief to the class,

including the method of processing class-member claims; the terms of any proposed award of

attorney's fees, including timing of payment; and any agreement required to be identified under

Rule 23(e)(3). *Id.* In this Circuit, settlements, particularly in the context of large class actions, are

favored. *See, e.g.*, *Erheart v. Verizon Wireless*, 609 F.3d 590, 594-95 (3d Cir. 2010) (recognizing

that:

> The strong judicial policy in favor of class action settlement
> contemplates a circumscribed role for the district courts in
> settlement review and approval proceedings . . . Settlement
> agreements are to be encouraged because they promote the amicable
> resolution of disputes and lighten the increasing load of litigation
> faced by the federal courts [and] the parties may also gain
> significantly from avoiding the costs and risks of a lengthy and
> complex trial.)

In assessing the reasonableness of the settlement, the Court must be mindful that

"[s]ettlements . . . reflect[] negotiated compromises. The role of a district court is not to determine

whether the settlement is the fairest possible resolution [but only whether] the compromises

reflected in the settlement . . . are fair, reasonable and adequate when considered from the

perspective of the class as a whole." *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 173-74 (3d

Cir. 2013) (citation omitted); *see also Skeen v. BMW of N. Am., LLC*, No. 13-cv-1531 (WHW)

(CLW), 2016 WL 4033969, at *7 (D.N.J. July 26, 2016). "While the issue of final settlement approval is not presently before the Court, it is important to consider the final approval factors during this stage so as to identify any potential issues that could impede the offer's completion." *Singleton v. First Student Mgmt. LLC*, No. 13-cv-1744 (JEI) (JS), 2014 WL 3865853, at *5 (D.N.J. Aug. 6, 2014).

To review the settlement, courts in this circuit analyze the settlement using nine factors from *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975), as well as the permissive and non-exhaustive factors from *In Re Prudential Ins. Co.*, 148 F.3d at 323. The *Girsh* Factors include:

> (1)      the complexity, expense and likely duration of the litigation;
> (2)      the reaction of the class to the settlement;
> (3)      the stage of the proceedings and the amount of discovery completed;
> (4)      the risks of establishing liability;
> (5)      the risks of establishing damages;
> (6)      the risks of maintaining the class action through the trial;
> (7)      the ability of the defendants to withstand a greater judgment;
> (8)      the range of reasonableness of the settlement fund in light of the best possible recovery; [and]
> (9)      the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Girsh*, 521 F.2d at 157. It is the settling parties' burden to demonstrate that the *Girsh* factors weigh in favor of approving the settlement. *In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 350 (3d Cir. 2010) (citations omitted).

Here, the proposed settlement provides for a total settlement fund of $5,482,500. (Settlement Agreement ¶ 1.9). After fees and costs are paid, class members who file a claim will be eligible to receive: (i) their out-of-pocket losses; (ii) lost time at the rate of $25 per hour for up to 10 hours; or (iii) an alternate cash payment of $25 ($50 in California). (Cecchi Decl., Exh. 2; Settlement Agreement. Exh. B). Settlement class members are also eligible for three years of credit

monitoring by MSC, at no cost. (ECF No. 168-4, "Long Form Notice," ¶ 8). The Court will now

assess whether the *Girsh* factors weigh in favor of approving this settlement.

### 1.    The Complexity, Expense, and Likely Duration of Litigation (Factor #1)

The first *Girsh* factor, the complexity, expense, and likely duration of litigation, favors

approval. This factor considers "the probable costs, in both time and money, of continued

litigation." *In re Gen. Motors*, 55 F.3d at 812 (quoting *Bryan v. Pittsburgh Glass Co.*, 494 F.2d

799, 801 (3d Cir. 1974)). Settlement is favored under this factor if litigation is expected to be

complex, expensive and time consuming." *Yedlowski v. Roka Bioscience*, No. 14-cv-8020 (FLW)

(TJB), 2016 WL 6661336, at *12 (D.N.J. Nov. 10, 2016) (quoting *In re Royal Dutch/Shell Transp.

Sec. Litig.*, No. 04-cv-374 (JAP), 2008 WL 9447623, at *17 (D.N.J. Dec. 9, 2008)).

Courts in this Circuit have found this first *Girsh* factor to be easily satisfied in data breach

class actions. *See In re Wawa, Inc. Data Sec. Litig.*, No. 19-cv-6019 (GKP), 2023 WL 6690705 at

*7 (E.D. Pa. Oct. 12, 2023) (finding the first *Girsh* factor "easily met" in complex data breach

class action and parties would incur significant expenses in further litigation including obtaining

class certification, briefing dispositive motions, obtaining experts, and going to trial); *In re

Philadelphia Inquirer Data Sec. Litig.*, No. 24-cv-2106 (KSM), 2025 WL 845118, at *9, (E.D. Pa.

Mar. 18, 2025) (same).

The instant matter involves a complex data breach action. Establishing liability would

require lengthy and complex litigation that would likely span years. Defendants already filed a

motion to dismiss. Responding to that motion would involve significant work, and there is always

risk that Defendants might prevail. If Plaintiffs survived the motion, they would then face lengthy

fact and expert discovery. At the close of discovery, Plaintiffs would have to file a complex class

certification motion, which would undoubtedly be challenged by Defendants. Plaintiffs might also

face a summary judgment, another complex and lengthy motion. Then Plaintiffs would face trial and, if successful, the inevitable appeal. In short, as many courts have already recognized, data breach litigation is long, complicated and expensive. This settlement, relatively early in the litigation, avoids delay, risk and expense, and affords class members real relief. Accordingly, this factor weighs in favor of preliminary approval.

### 2.    The Reaction of the Class to the Settlement

At this preliminary approval stage, it is impossible to know the reaction of the class to the settlement. The class representatives support the settlement. Class members will receive notice and will be afforded the opportunity to object or opt out. This factor is, at best, neutral.

### 3.    The Stage of the Proceedings and the Amount of Discovery to be Completed (Factor #3)

"This factor considers the degree of case development accomplished by counsel prior to settlement." *Bredbenner v. Liberty Travel, Inc.*, Nos. 09-cv-905, 09-cv-1248, 09-cv-4587 (MF), 2011 WL 1344745, at *12 (D.N.J. Apr. 8, 2011). Here, this litigation has been pending since January 3, 2024. A motion to dismiss was filed, but terminated by the Court before fully briefed so the parties could pursue settlement. The parties attended a mediation session in September and then continued to negotiate the settlement for months. While no discovery was completed, a thorough factual investigation was conducted to facilitate and assess the settlement. Further, the Settlement Agreement contemplates discovery with regard to Defendants' financials. Thus, while this matter is still in its relative infancy, this matter has proceeded far enough along that this factor weigh in favor of settlement.

### 4.    The Risks of Establishing Liability and Damages (Factors #4 and #5)

"Courts commonly analyze the fourth and fifth *Girsh* factors together." *Beltran*, 2023 WL 319895, at *5 (internal citations omitted). These factors "survey the potential risks and rewards of

17

proceeding to litigation in order to weigh the likelihood of success against the benefits of an immediate settlement." *In re Warfarian Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004). This inquiry "requires a balancing of the likelihood of success if 'the case were taken to trial against the benefits of immediate settlement.'" *In re Safety Components, Inc. Sec. Litig.*, 166 F. Supp. 2d 72, 89 (D.N.J. 2001) (quoting *In re Prudential Ins. Co.*, 148 F.3d at 319).

While Plaintiffs are confident of the claims in this matter, Defendants are equally confident in their defenses. Plaintiffs recognize that litigation is not without risk.  If this matter did not settle, then the Motion to Dismiss filed by HealthEC, Corewell and Beaumont would be reinstated, with Motions to Dismiss from the other remaining Defendants likely to follow. Even if Plaintiffs survive the motion to dismiss, they would also face an opposed motion for class certification, and likely a motion for summary judgment. In litigation, nothing is ever certain. Defendants are adamant they breached no duty of care and are not liable for being illegally hacked.  The settlement eliminates this risk and avoids further delay.

Further, damages here will be difficult to prove. Many of the settlement class members likely have minimal actual damages. Defendants will likely argue any damages are speculative. Therefore, these two factors weigh in favor of preliminary approval.

## 5.    The Risks of Maintaining the Class Action Through Trial (Factor #6)

This factor "measures the likelihood of obtaining and keeping a class certification if the action were to proceed to trial." *In re Warfarian*, 391 F.3d at 538. As stated in *In re Gen. Motors*:

> The value of a class action depends largely on the certification of the class because, not only does the aggregation of the claims enlarge the value of the suit, but often the combination of the individual cases also pools litigation resources and may facilitate proof on the merits. Thus, the prospects for obtaining certification have a great impact on the range of recovery one can expect to reap from the action.

55 F.3d at 817.The Third Circuit has acknowledged this exercise is somewhat "perfunctory" because district courts retain the discretion to decertify or modify a class that becomes unmanageable. *In re Rent-Way Secs. Litig.*, 305 F. Supp. 2d. 491, 506 (W.D. Pa. 2003). Courts in the Third Circuit have routinely found this factor to be met in data breach class action cases because there is always a risk of decertification. *Philadelphia Inquirer Data Sec. Litig.*, 2025 WL 845118 at *10; *Corra v. ACTS Ret. Svcs. Inc.*, 22-cv-2917 (GKP), 2024 WL 22075, at *8 (E.D. Pa. Jan. 2, 2024); *In re Onix Grp.*, 2024 WL 5107594 at *10. Accordingly, this factor weighs in favor of settlement.

### 6.    The Ability of Defendants to Withstand a Greater Judgment (Factor #7)

This factor "is concerned with whether the defendants could withstand a judgment for an amount significantly greater than the Settlement." *In re Cendant Corp.*, 264 F.3d 201, 240 (3d Cir. 2001). This Motion raises issues concerning the financial solvency of HealthEC. (*See* Settlement Agreement ¶ 6.1; Br. at 10).There is concern that if this litigation proceeds, Plaintiffs might not be able to collect any judgment they obtain against HealthEC. (Br. at 10). Plaintiffs' counsel investigated the financial stability of HealthEC and the Settlement Agreement provides for them to receive certain financial information from HealthEC to insure Class Counsel that settlement is the best option to insure that settlement class members receive some monetary recovery. HealthEC is the largest contributor to the Common Fund, but might not be able to withstand any greater judgment. Accordingly, this factor weighs heavily in favor of settlement.

### 7.    The Range of Reasonableness of the Settlement in Light of the Best Possible recovery and all the attendant risks of litigation (Factors #8 and #9)

The settlement provided for here is significant in light of Plaintiffs' potential best recovery should they ultimately prevail at trial. As explained above, Plaintiffs will face significant

19

challenges proving damages. Even if Defendants were liable for the improper disclosure of their health information, that disclosure might not have led to any actual damages if the disclosed information was not used to the detriment of Plaintiffs. The settlement provides each class member with at least $25 (which could increase or decrease depending on the number of claims filed), as well as three years of credit monitoring. For those with actual out-of-pocket losses or lost time, they can achieve an actual recovery of their losses up to a reasonable cap. Even if Plaintiffs took this case all the way to trial and prevailed, it is unlikely they would receive much more in damages than what this settlement affords them. *See Corra*, 2024 WL 22075, at *9 (this factor weighed in favor of settlement in a data breach case due to complicated issues regarding choice-of-law and how to prove damages class wide, meaning there is a high probability that proceeding to trial would yield nothing for harmed class members); *Philadelphia Inquirer Data Sec. Litig.*, 2025 WL 845118, at *10 (these factors met in data breach class action where there were risks in proving whether providers owed a duty to consumers to protect their information, and the settlement provided monetary relief, credit monitoring for affected class members, and increased data information security measures to better safeguard information.).

In addition, as described above, there are risks in continuing this litigation. If the parties did not reach a settlement, Plaintiff would face a motion to dismiss. Defendants continue to deny any liability to the Class. (Settlement Agreement at 2). Further, the Settlement Agreement acknowledges the "distressed financial condition" of HealthEC, meaning that there is a risk that if Plaintiffs obtained a judgment after years of litigation and trial, HealthEC would not be able to satisfy such a judgment. (*See Id.*). Accordingly, this factor once again weighs in favor of settlement.

### C.  The Prudential Considerations

Since *Girsch*, the Third Circuit has held that, because of the "sea-change in the nature of class actions," it may be helpful to expand the *Girsch* factors to include permissive and non-exhaustive factors, including:

> [1] [T]he maturity of the underlying substantive issues . . . ; [2] the existence and probable outcome of claims by other classes and subclasses; [3] the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved — or likely to be achieved — for other claimants; [4] whether class or subclass members are accorded the right to opt out of the settlement; [5] whether any provisions for attorneys' fees are reasonable; and [6] whether the procedure for processing individual claims under the settlement is fair and reasonable.

*In Re Pet Food Prods.*, 629 F.3d at 350 (quoting *In Re Prudential Ins. Co.*, 148 F.3d at 323). *See In re Baby Prods.*, 708 F.3d at 174 ("Unlike the *Girsh* factors, each of which the district court must consider before approving a class settlement, the *Prudential* considerations are just that, prudential. They are permissive and non-exhaustive, 'illustrat[ing] . . . [the] additional inquiries that in many instances will be useful for a thoroughgoing analysis of a settlement's terms.'") (internal citations omitted). "The Court does not have to perform analysis on each *Prudential* factor – rather it must address the factors that are relevant to the particular case at hand." *Castro v. Sanofi Pasteur, Inc.*, No. 11-cv-7178 (MCA), 2017 WL 4776626, at *6 (D.N.J. Oct. 20, 2017). There are three factors relevant at this time – whether class members are afforded the right to opt out, the reasonableness of the proposed attorneys' fees award, and the whether the procedure for processing claims is fair and reasonable.

First, Class members are able to opt-out if they so choose. (Settlement Agreement ¶ 4.1)). Second, the proposed attorney fees are 34% of the Common Fund, or $1,864,050. (Br. at 4; Long Form Notice at 9). Counsel will seek expenses for settlement administration in an amount not to exceed $100,000. (Br. at 4). Counsel will also seek up to $2,500 per Lead Plaintiff as a service

award. (Settlement Agreement ¶ 9.6). At this preliminary stage, and given the fact that Plaintiff contends there are at least 1.6 million class members, (Br. at 17), the Court finds proposed range of fees and costs to be reasonable. *See Silvis v. Ambit Energy L.P.*, 326 F.R.D. 419, 436 (E.D. Pa. 2018) (finding $1,450,000 in fees and costs to be reasonable where counsel recovered $9,300,000, a third of the full potential recovery, with 12,542 claims received); *Sanofi Pasteur*, 2017 WL 4776626, at *7 (finding this factor satisfied where class counsel requested one-third of the settlement amount in fees); *Yedlowski*, 2016 WL 6661336, at *17 (same). The reasonableness of the requested attorney fee award and costs will be further scrutinized at the final fairness hearing, where the Court will have before it a motion for final approval of the class action settlement and a motion for attorneys' fees and costs. The Court will have more data in front of it concerning the total number of claims submitted and the total number of opt outs – two factors that could impact the amount available for disbursement to class members from the Common Fund. The Court is satisfied at this preliminary stage that the proposed fees and costs are at least preliminarily reasonable.

Finally, the procedure for processing individual claims is fair and reasonable because Plaintiff proposed to use Verita Global, LLC ("Verita") to serve as the settlement administrator, whose qualifications are to be discussed *infra*. Verita is an experienced claims administrator and will ensure a fair process will be followed in administering the settlement.

### D. The Proposed Notice Plan

Finally, the Court turns to the proposed notice plan. The Court must "direct notice in a reasonable manner to all class members who would be bound by the proposal." *Easterday*, 2023 WL 4398491, at *5 (quoting Fed. R. Civ. P. 23(e)(1)). Class notice is subject to due process requirements and must comply with the method and content guidelines in Fed. R. Civ. P. 23(c)(2) and 23(e)(1). *Id.* In a Rule 23(b)(3) class action, "the court must direct to class members the best

notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). When the settlement notice is sent simultaneously with the notice, the notice must inform class the settlement agreement is not a "fait accompli" and that class members can be heard, object to the settlement, and opt out. *Easterday*, 2023 WL 4398491, at *5 (citing *In re Gen. Motors*, 55 F.3d at 789). The notices must "clearly and concisely state in plain, easily understood language":

1.    the nature of the action;
2.    the definition of the class certified;
3.    the class claims, issues, or defenses;
4.    that a class member may enter an appearance through an attorney if the member so desires;
5.    that the court will exclude from the class any member who requests exclusion;
6.    the time and manner for requesting exclusion; and
7.    the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

Due process requires notification to the class "(1) of the nature of the pending litigation, (2) of the settlement's general terms, (3) that complete information is available from the court files, and (4) that any class member may appear and be heard at the Fairness Hearing." *Easterday*, 2023 WL 4398491, at *6 (quoting *In re Prudential Ins. Co.*, 962 F. Supp. at 450). The notice must "describe, in detail, the nature of the proposed settlement, the circumstances justifying it, and the consequences of accepting and opting out of it." *In re Diet Drugs*, 226 F.R.D. 498, 518 (E.D. Pa. 2005) (internal citations omitted)

The parties seek to appoint Verita as the Settlement Administrator. Verita will obtain the names of the 1.6 million potential class members from HealthEC. (ECF No. 168-8, "Reed Decl.," ¶ 7). Verita will review the list to ensure there are no duplicate class members. (*Id.*). Verita will send a direct individual notice via email in both Spanish and English to all members for whom an

email address exists. (*Id.* ¶ 12). The notice will be contained in the body of the email, as opposed to an attachment, to avoid spam filters and improve deliverability. (*Id.*). Email delivery will be attempted three times, and the campaign will return data regarding the number of emails successfully delivered, email open rates, and email bounce backs. (*Id.* ¶ 13). Verita will send a single postcard notice via the United States Postal Service to all Settlement Class Members whose email notice is known to not have been delivered or for which an email address is not available on the Class List. (*Id.* ¶ 14). Prior to mailing, the postal addresses will be checked against the National Change of Address databased maintained by the U.S. Postal Service; certified via the Coding Accuracy Support System; and verified through Delivery Point Validation. (*Id.* ¶ 15). Postcards returned as undeliverable will be re-mailed to any address available through postal service forwarding order information. (*Id.*). Verita will send reminder emails to all Settlement Class Members with an email address if they are instructed to do so by Class Counsel.

Verita will also release a nationwide press release to a variety of outlets including AP News. (*Id.* ¶ 17). It will also implement a paid search campaign to help drive Settlement Class Members who are actively searching for information about the litigation to the dedicated settlement website. (*Id.* ¶ 18). In other words, if Settlement Class Members search the internet regarding the instant class action lawsuit, they will receive ads for the Settlement website to encourage them to visit the website for more information. (*Id.*).

Class members will be able to submit their claim forms online. They will also be able to view and download all notices, the complaint in this action, the Settlement Agreement, Plaintiff's Motion for Preliminary Approval, the Court's Preliminary Approval Order, and all other relevant documents and Court filings. (*Id.* ¶ 20). There will also be a frequently asked questions and answers page, as well as information regarding important dates and deadlines. (*Id.*). There will

also be a toll-free number, as well as a case-specific email address where class members can speak with Verita case specialists. (*Id.* ¶¶ 21-22).

The Court finds that the proposed Notice Program satisfies due process and meets the requirements of Fed. R. Civ. P. 23(c)(2) and 23(e)(1). It describes the nature of the action as a data breach class action. (*See* Long Form Notice at 1; ECF No. 168-4, "Short Form Notice," at 1-2). It provides the definition of the class so class members can easily determine if they are eligible to participate in the settlement. (*See id.*) It explains the issues and the claims of each party, including that Defendants deny liability, and that class members can retain their own attorneys and object to the settlement. The Court also finds the notice program will reach as many class members as possible. Finally, the Court notes that Verita has experience in serving as a class administrator in data breach cases and has been recognized as such in this circuit. *See In re Philadelphia Inquirer Data Sec. Litig.*, 2024 WL 4582881, at *6 (describing Verita as a nationally recognized claims administrator that has handled dozens of [. . . .]  data breach settlements."). For these reasons, the Court finds the notice plan to be adequate.

## CONCLUSION

For the foregoing reasons, the Motion is **GRANTED**. An accompanying Order follows.

*s/ Stacey D. Adams*
Hon. Stacey D. Adams
United States Magistrate Judge