**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

In re HealthEC LLC Data
Breach Litigation

No. 2:24-cv-00026 (JKS)
(SDA)

---

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION**
**FOR FINAL APPROVAL OF SETTLEMENT**

---

# TABLE OF CONTENTS

**PAGE(S)**

TABLE OF AUTHORITIES .................................................................................. iii

I.      INTRODUCTION ............................................................................1

II.     INCORPORATION BY REFERENCE ...........................................4

III.    SUMMARY OF SETTLEMENT TERMS .....................................4

    A.  The Settlement Class. ..............................................................4

    B.  The Substantial Benefits to the Class. ......................................4

    C.  Class Notice Plan.....................................................................5

IV.     THE SETTLEMENT WARRANTS FINAL APPROVAL ............6

    A.  Notice to the Class Satisfied the Requirements of Rule 23 and Due Process. .................................................................................7

    B.  The Settlement is Fair, Reasonable, and Adequate...................8

        1.  The Rule 23(e)(2) Factors Are Satisfied. .........................11

            a.  Plaintiffs and Plaintiffs' Counsel Adequately Represented the Class. ...........................................................11

            b.  The Settlement Resulted from Arm's-Length Negotiations.......11

            c.  The Relief Provided to the Settlement Class is Fair, Reasonable and Adequate. ..........................................14

            d.  Rule 23(e)(2)(C)(ii) – Effectiveness of the "proposed method of distributing relief" and "the method of processing class-member claims." ...............................26

            e.  Rule 23(e)(2)(C)(iii) – The terms and timing of any proposed attorney's fee award. ...................................27

            f.  Rule 23(e)(2)(C)(iv) – Any agreement required to be identified under Rule 23(e)(3). ...................................27

i

g.  Rule 23(e)(2)(D): The Settlement treats Class Members
equitably to each other. ................................................27

V.  THE COURT SHOULD CERTIFY THE PROPOSED CLASS .................28

A.  The Rule 23(a) Requirements Are Satisfied. ..........................29

1.  Rule 23(a)(1): Numerosity is Satisfied. ...........................29

2.  Rule 23(a)(2): Commonality is Satisfied .........................30

3.  Rule 23(a)(3): Typicality is Satisfied. .............................31

4.  Rule 23(a)(4): Adequacy is Satisfied. .............................32

5.  The Proposed Class is Ascertainable. .............................33

B.  As required by Rule 23(b)(3), common issues predominate and
class adjudication is superior to individualized litigation. ......................34

C.  Proposed Class Counsel Satisfy Rule 23(g). ...........................37

VI.  THE REQUESTED ATTORNEYS' FEES AND EXPENSES ARE
REASONABLE AND SHOULD BE APPROVED. ....................................38

VII.  THE COURT SHOULD APPROVE CLASS REPRESENTATIVE
SERVICE AWARDS .........................................................................39

VIII.  CONCLUSION...........................................................................40

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                   **Page(s)**

*In re Aetna UCR Litig.*,
  2013 WL 4697994 (D.N.J. Aug. 30, 2013) ......................................................12

*In re Am. Fin. Resources, Inc. Data Breach Litig.*,
  22-cv-1757, ECF No. 81 (D.N.J. Oct. 3, 2024)................................................14

*In re Am. Med. Collection Agency Inc. Customer Data Sec. Breach Litig.*,
  19-md-02904, ECF No. 609 (D.N.J. Nov. 3, 2023) ..........................................14

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997)..............................................................21, 28, 34, 36

*In re Auto. Refinishing Paint Antitrust Litig.*,
  617 F. Supp. 2d 336 (E.D. Pa. 2007)................................................................19

*In re Baby Prod. Antitrust Litig.*,
  708 F.3d 163 (3d Cir. 2013) .........................................................................8, 11

*Bell Atl. Corp, v. Bolger*,
  2 F.3d 1304 (3d Cir. 1993) ...............................................................................16

*Beneli v. BCA Fin. Servs., Inc.*,
  324 F.R.D. 89 (D.N.J. 2018)...............................................................10, 18, 21

*Bernhard v. TD Bank, N.A.*,
  2009 WL 3233541 (D.N.J. 2009) .....................................................................39

*Bredbenner v. Liberty Travel, Inc.*,
  2011 WL 1344745 (D.N.J. Apr. 8, 2011).....................................................12, 15

*Butler v. Sears, Roebuck & Co.*,
  702 F.3d 359 (7th  Cir. 2012) ...........................................................................34

*Byrd v. Aaron's Inc.*,
  784 F.3d 154 (3d Cir. 2015) .............................................................................33

*Carnegie v. Household Int'l, Inc.*,
  376 F.3d 656 (7th Cir. 2004) ............................................................................35

*Castro v. Sanofi Pasteur Inc.*,
    2017 WL 4776626 (D.N.J. Oct. 23, 2017) .........................................................23

*In re Cendant Corp. Sec. Litig.*,
    264 F.3d 201 (3d Cir. 2001) ...................................................................15, 19, 22

*City Select Auto Sales Inc. v. BMW Bank of N. Am. Inc.*,
    867 F.3d 434 (3d Cir. 2017) ...................................................................................33

*Cullen v. Whitman Med. Corp.*,
    197 F.R.D. 136 (E.D. Pa. 2000)..............................................................................23

*Dewey v. VW of Am.*,
    728 F. Supp. 2d 546 (D.N.J. 2010).........................................................................20

*Ehrheart v. Verizon Wireless*,
    609 F.3d 590 (3d Cir. 2010) .....................................................................................8

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974)..................................................................................................7

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*,
    55 F.3d 768 (3d Cir. 1995) ...............................................................................16, 17

*Girsh v. Jepson*,
    521 F.2d 153 (3d Cir. 1975) ...........................................................................*passim*

*Glaberson v. Comcast Corp.*,
    2014 WL 7008539 (E.D. Pa. Dec. 12, 2014).........................................................13

*Hall v. Accolade, Inc.*,
    No. 17-cv-3423, 2019 WL 3996621 (E.D. Pa. Aug. 23, 2019)....................14, 26

*In re Humanigen, Inc. Sec. Litig.*,
    2024 WL 4182634 (D.N.J. Sept. 13, 2024)..............................................................9

*Johnston v. HBO Film Mgmt.*,
    265 F.3d 178 (3d Cir. 2001) ...................................................................................31

*Martina v. L.A. Fitness Int'l, LLC*,
    2013 WL 5567157 (D.N.J. Oct. 8, 2013) ...............................................................16

*Martinez-Santiago v. Public Storage*,
  312 F.R.D. 380 (D.N.J. 2015).....................................................................29

*McDonough v. Toys R Us, Inc.*,
  80 F. Supp. 3d 626 (E.D. Pa. 2015)............................................................16

*McMahon v. Volkswagen Aktiengesellschaft*,
  No. 22CV01537, 2023 WL 4045156 (D.N.J. June 16, 2023) ..........................17

*In re Merck & Co., Vytorin ERISA Litig.*,
  2010 WL 547613 (D.N.J. Feb. 9, 2010).................................................16, 21

*In re Merck & Co., Vytorin/Zetia Sec. Litig.*,
  2012 WL 4482041 (D.N.J., Sept. 25, 2012)................................................31

*In re Merry–Go–Round Enters.*,
  244 B.R. 327 (Bankr. D. Md. 2000) ..........................................................38

*In re NASDAQ Mkt.- Makers Antitrust Litig.*,
  187 F.R.D. 465 (S.D.N.Y. 1998) ...............................................................13

*In re Nat'l Football League Players Concussion Inj. Litig.*,
  821 F.3d 410 (3d Cir. 2016) ...............................................................18, 31

*In re Neurontin Antitrust Litig.*,
  2011 WL 286118 (D.N.J. Jan. 25, 2011)....................................................35

*New England Carpenters Health Benefits Fund v. First Databank,*
  *Inc.*,
  2009 WL 2408560 (D. Mass. Aug. 3, 2009) ...............................................38

*In re Novo Nordisk Sec. Litig.*,
  2020 WL 502176 (D.N.J. Jan. 31, 2020).....................................................34

*O'Brien v. Brain Research Labs, LLC*,
  2012 WL 3242365 (D.N.J. Aug. 9, 2012) ...............................................21, 22

*Oliver v. BMW of N. Am., LLC*,
  2021 WL 870662 (D.N.J. Mar. 8, 2021) .....................................................17

*In re Pet Food Prods. Lib. Litig.*,
  629 F.3d 333 (3d Cir. 2010) .................................................................8, 10

*In re Philips/Magnavox TV Litig.*,
    2012 WL 1677244 (D.N.J. May 14, 2012)........................................................12

*Pro v. Hertz Equip. Rental Corp.*,
    Civil Action No. 06-3830, 2013 U.S. Dist. LEXIS 86995 (D.N.J.
    June 20, 2013)........................................................18

*In re Processed Egg Prod. Antitrust Litig.*,
    284 F.R.D. 249 (E.D. Pa. 2012)........................................................17

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
    148 F.3d 283 (3d Cir. 1998) ........................................................*passim*

*Reap v. Cont'l Cas. Co.*,
    199 F.R.D. 536 (D.N.J. 2001)........................................................35

*In re Rent-Way Sec. Litig.*,
    305 F. Supp. 2d 491 (W.D. Pa. 2003)........................................................20

*In re Rite Aid Corp. Sec. Litig.*,
    146 F. Supp. 2d 706 (E.D. Pa. 2001)........................................................38

*In re Rite Aid Corp. Sec. Litig.*,
    362 F. Supp. 2d 587 (E.D. Pa. 2005)........................................................38

*In re Schering Plough Corp. ERISA Litig.*,
    589 F.3d 585 (3d Cir. 2009) ........................................................31, 32

*Sheinberg v. Sorensen*,
    606 F.3d 130 (3d Cir. 2010) ........................................................32, 36

*Shelton v. Bledsoe*,
    775 F.3d 554 (3d Cir. 2015) ........................................................33

*Stoetzner v. U.S. Steel Corp.*,
    897 F.2d 115 (3d Cir. 1990) ........................................................17

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
    559 U.S. 662 (2010)........................................................35

*Sullivan v. DB Invs., Inc*,
    667 F.3d 273 (3d Cir. 2011) ........................................................21, 30

*United Airlines, Inc. v. McDonald*,
 432 U.S. 385 (1977) (Powell, J., dissenting) ........................................................8

*Vaccaro v. New Source Energy Partners L.P.*,
 2017 WL 6398636 (S.D.N.Y. Dec. 14, 2017) ....................................................17

*In re Valeant Pharm. Int'l Sec. Litig.*,
 2020 U.S. Dist. LEXIS 103675 (D.N.J. June 15, 2020)....................................10

*Varacallo v. Mass Mut. Life Ins. Co.*,
 226 F.R.D. 207 (D.N.J. 2005).............................................................................13

*Wal-Mart Stores, Inc. v. Dukes*,
 564 U.S. 338 (2011).......................................................................................29, 30

*In re Warfarin Sodium Antitrust Litig*,
 212 F.R.D. 231 (D. Del. 2002), *aff'd* 391 F.3d 516 (3d Cir. 2004) ..................20

*In re Warfarin Sodium Antitrust Litig.*,
 391 F.3d 516 (3d Cir. 2004) ...........................................................15, 20, 24, 30

*Weiss v. Mercedes-Benz of N. Am., Inc.*,
 899 F. Supp. 1301 (D.N.J. 1995).........................................................17, 22, 38

*Weissman v. Philip C. Gutworth, P.A.*,
 2015 WL 333465 (D.N.J. Jan. 23, 2015).............................................................28

*In re Wellbutrin XL Antitrust Litig.*,
 282 F.R.D. 126 (E.D. Pa. 2011)....................................................................29, 30

*In re Wilmington Tr. Sec. Litig.*,
 2018 WL 6046452 (D. Del. Nov. 19, 2018)........................................................17

*Wragg v. Ortiz*,
 2020 WL 2745247 (D.N.J. May 27, 2020)....................................................28, 29

**Other Authorities**

Fed. R. Civ. P. 23 ............................................................................... *passim*

## I.    INTRODUCTION

Plaintiffs, on behalf of themselves and other members of the proposed Settlement Class, by and through their counsel, respectfully move the Court for an order: (1) granting final approval of the Settlement set forth in the Settlement Agreement (the "SA"); (ii) certifying the Settlement Class for settlement purposes only; (iii) granting final appointment of Allan Bishop, Caroline Cappas, Jessica Fenn, Keith Fielder, Joni Fielder, Gregory Leeb, and Mindy Markowitz ("Plaintiffs" or "Class Representatives"), as Settlement Class Representatives and the law firms of Carella, Byrne, Cecchi, Brody & Agnello, P.C.; and Stueve Siegel Hanson LLP, as Settlement Class Counsel; (iv) appointing Verita as Settlement Claim Administrator; and (v) entering a final judgment dismissing the action with prejudice. This Motion is supported by the Declaration of Settlement Class Counsel ("SCC Decl.") and the Declaration of Edward Dattilo of Verita ("Dattilo Decl.").

On June 6, 2025, this Court entered an Order: (i) preliminarily approving the Settlement between Plaintiffs, on behalf of themselves and all other similarly situated, and Defendants HealthEC, LLC ("HealthEC"), Community Health Care Systems, Inc. ("Community Health Care Systems"), Corewell Health d/b/a Corewell ("Corewell"), MD Valuecare, LLC ("MD Valuecare"), and Oakwood Accountable Care Organization, LLC d/b/a Beaumont ACO ("Beaumont") (together

"Defendants"), and (ii) conditionally certifying the following class for settlement purposes:

> the approximately 1.67 million individuals . . . that were patients of [the Provider Defendants] whose personal information and/or protected health information was compromised in the [Data Breach] announced by HealthEC in December 2023.

ECF No. 168-4 ("Settlement Agreement") ¶ 1.33.[1]

Following the Court's Preliminary Approval Order, notice of the proposed Settlement was distributed to the Class by July 21, 2025, in accordance with the parties' Notice Plan (ECF No. 168-8) previously approved by the Court. ECF No. 175, at 22-25; ECF No. 176 ¶ 9. The Settlement's straightforward claims process has resulted in nearly 50,000 claims, with still more timely claims expected. Dattilo Decl. at ¶ 13.

With final approval of the Settlement, Settlement Class Members will receive material benefits without the inherent risks and delays associated with continued complex class litigation. Moreover, the Settlement resulted from arm's-length,

---

[1] Excluded from the Settlement Class are: (i) each of the Defendants and their respective officers and directors; (ii) the Judge and/or Magistrate Judge assigned to evaluate the fairness of this settlement; and (iii) any other Person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding, or abetting the Data Breach or who pleads *nolo contender* to any such charge. (*Id.* ¶ 1.33).

good-faith negotiations between and among experienced counsel under the auspices of a respected and experienced mediator. It provides a fair, reasonable, and adequate resolution of this litigation, which will eliminate costs and reduces expenditure of resources, eliminates the risk of uncertain litigation outcomes, and prevents further delay in remedying the harms suffered by Class Members.

Class Member reaction to the Settlement is also overwhelmingly positive. In comparison to the 50,000 claims submitted to date, there have been zero objections and only 22 requests to opt out, representing a tiny percentage of the Settlement Class. This collective reaction from the Class indicates tremendous support for the Settlement and supports final approval.[2]

In sum, the Settlement before the Court represents real and substantial benefits and an outstanding result for the Class that far exceeds all applicable requirements of law, including Rule 23(e)(2) and constitutional due process. The Court should grant final approval and enter judgment so Class Members can expeditiously obtain relief from this Settlement.

---

[2] The deadline for filing requests for exclusion or to object to the Settlement is December 22, 2025. The Plaintiffs' will update the Court about the Class's reaction to the Settlement in the Plaintiffs' December 29, 2025, reply brief to be submitted in support of the motion for final approval of the settlement. ECF No. 176 ¶ 33.

## II.    INCORPORATION BY REFERENCE

In the interest of judicial efficiency, for factual and procedural background on this case, Plaintiffs refer this Court to and hereby incorporate Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement (ECF 168-1) filed on March 17, 2025, and the accompanying Exhibits, including the proposed Settlement Agreement, filed in conjunction therewith**.** Plaintiffs also incorporate by reference the Plaintiffs' Motion for Attorneys' Fees, Expenses, and Service Awards to be filed along with this motion for final approval on December 8, 2025.

## III.    SUMMARY OF SETTLEMENT TERMS

### A.    The Settlement Class.

The Settlement Class, as preliminarily approved by the Court, consists of "approximately 1.67 million individuals . . . that were patients of [the Provider Defendants] whose personal information and/or protected health information was compromised in the [Data Breach] announced by HealthEC in December 2023." ECF No. 168-4. The Settlement Class is subject to basic exclusions listed in footnote 1, *supra*.

### B.    The substantial benefits to the Class.

The Settlement Agreement provides substantial benefits to eligible Settlement Class Members. Under the Settlement, Class Members were able to submit claims for out-of-pocket losses related to the breach, lost time associated with remedying or taking preventative measures to avoid such losses, or could simply request an

alternative cash payment of $25, or $50 for California residents. *See* Settlement Agreement, ECF No. 174-2 (Exhibit D to the Settlement Agreement). In addition, all Class Members are entitled to receive three years of Medical Shield Complete, a comprehensive service designed to prevent medical financial fraud, which includes a $1,000,000 insurance policy in the event of related loss. Importantly, even though the claims period has closed, Class Members can enroll in the monitoring services at *any time* during the three-year term of the program. *Id*.

### C.    Class Notice Plan

The Settlement Agreement and Preliminary Approval Order provided for Class Notice to be sent to Settlement Class Members by email to the extent the Defendant has email addresses of the Settlement Class, and by first class mail if email addresses were unavailable. ECF No. 176, at 2, 5. The Settlement Claim Administrator confirmed that by July 21, 2025 (the Notice deadline), in a timely fashion, Class Notice was emailed to 528,285 Class Members and mailed to 981,385 Class Members, in accordance with the Settlement Agreement and Preliminary Approval Order. Dattilo Decl. at ¶¶ 6-10.

In addition, by the Notice Deadline the Settlement Administrator established the Settlement website (https://www.healthecsettlement.com/) containing, among other information: (1) instructions on how to submit a Claim for reimbursement either by mail or online submission; (2) details about the lawsuit, the Settlement and

its benefits, and the Settlement Class Members' legal rights and options including objecting to or requesting to be excluded from the Settlement and/or not doing anything; (3) instructions on how to contact the Settlement Claim Administrator, Defendants and Settlement Class Counsel for assistance; (4) a copy of the Claim Form, Long Form Class Notice, the Settlement Agreement, the Preliminary Approval Motion and Order, the Class Counsel Fee and Expenses Application, other pertinent orders and documents; (5) important dates pertaining to the Settlement including the procedures and deadlines to opt-out of or object to the Settlement, the procedure and deadline to submit a claim for reimbursement, and the date, place and time of the Final Fairness Hearing and (6) answers to Frequently Asked Questions (FAQs). *Id*. at 11. As of December 1, 2025, the website received 133,733 visits. *Id*. Finally, the Settlement Administrator established a toll-free telephone number to respond to Class Member inquiries. As of December 1, 2025, 7,586 calls were placed to the Settlement Administrator. *Id* at 12.

## IV.    THE SETTLEMENT WARRANTS FINAL APPROVAL

To grant final approval of the Settlement, the Court must determine that the settlement agreement is "fair, reasonable, and adequate" under Rule 23(e)(2). The 2018 amendments to Rule 23 make clear that the Court should focus "on the primary procedural considerations and substantive qualities that should always matter to the decision whether to approve the [settlement]." Fed. R. Civ. P. 23(e)(2), 2018 Adv.

Cmt. Notes. Accordingly, Plaintiffs analyze the Settlement under the framework of Rule 23 and case law governing approval of class settlements, which are substantially similar and overlap. Regardless of the factors the Court employs, final approval is appropriate.

> **A.    Notice to the Class satisfied the requirements of Rule 23 and due process.**

Rule 23(b)(3) class actions must satisfy Rule 23(c)(2)'s notice provisions. Here, pursuant to the Court's Preliminary Approval Order, the Court-authorized Settlement Administrator, Verita, caused the approved Class Notice to be sent to Class Members. This notice program, which combines individual notice to all Class Members who can be reasonably identified, along with substantial web exposure, meets the requirements of Fed. R. Civ. P. 23. This Rule calls for "the best notice practicable under the circumstances including individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974); *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 326-27 (3d Cir. 1998). As this Court held in granting Preliminary Approval, the Notice Plan here "satisf[ies] the requirements under Rule 23 of the Federal Rules of Procedure and due process." ECF No. 176 at 5.

Here, the Class has been given notice of the proposed Settlement, and their rights in connection with the Settlement, as well as the method and dates by which they may: (i) object to the Settlement and/or Class Counsel's requests for attorneys'

fees and expenses, (ii) request exclusion from the Class, and (iii) submit a claim to be eligible to participate in the Settlement and receive a payment. Class Members have also been advised of the date of the Fairness Hearing at which they can be heard over any objection raised. For these reasons, the Court-approved notice program for the Settlement provided the best practicable notice of the Settlement, consistent with the requirements of Rule 23(c)(2)(B) and due process, to members of the Class.

### B.    The Settlement is fair, reasonable, and adequate.

"[S]ettlement agreements are highly favored in the law and will be upheld whenever possible because they are a means of amicably resolving doubts . . . and preventing lawsuits." *United Airlines, Inc. v. McDonald*, 432 U.S. 385, 401 (1977) (Powell, J., dissenting). In complex class action lawsuits such as this, the policy of favoring voluntary resolution through settlement is particularly strong. *See In re Pet Food Prods. Lib. Litig.*, 629 F.3d 333, 351 (3d Cir. 2010) ("overriding public interest in settling class action litigation"); *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 593-95 (3d Cir. 2010) (courts within this Circuit have a "strong judicial policy in favor of class action settlement"). "Settlement agreements are to be encouraged because they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by the federal courts." *Ehrheart*, 609 F.3d at 594. As such, courts are "hesitant to undo an agreement that has resolved a hard-fought, multi-year litigation," such as this one. *In re Baby Prod. Antitrust Litig.*, 708 F.3d 163, 175 (3d

Cir. 2013). "The decision of whether to approve a proposed settlement of a class action is left to the sound discretion of the district court." *Girsh v. Jepson*, 521 F.2d 153, 156 (3d Cir. 1975).

Rule 23(e)(2) identifies four factors considered in making the fairness determination, all of which are satisfied here: (1) adequacy of representation, (2) existence of arm's-length negotiations, (3) adequacy of relief, and (4) equitableness of treatment of class members. Fed. R. Civ. P. 23(e)(2). "The goal of [the] amendment is not to displace any [existing] factor, but rather to focus the court . . . on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Fed. R. Civ. P. 23(e) advisory committee note (2018). These factors overlap with the factors that courts in this Circuit have typically used for purposes of reviewing a proposed class action settlement (the "*Girsh* factors"):

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Girsh v. Jepson*, 521 F. 2d 153, 156-57 (3d Cir. 1975). Courts in the Third Circuit have confirmed the continued use of these factors after the 2018 amendments. *See*

*In re Humanigen, Inc. Sec. Litig.*, 2024 WL 4182634, at *4 n.6 (D.N.J. Sept. 13, 2024) (citing *In re: Google Inc. Cookie Placement Consumer Priv. Litig.*, 934 F.3d 316, 329 (3d Cir. 2019)). The settling parties must prove that "the *Girsh* factors weigh in favor of approval of the settlement." *In re Pet Food Prods. Liability Litig.*, 629 F. 3d 333, 350 (3d Cir. 2010). "These factors are a guide and the absence of one or more does not automatically render the settlement unfair." *In re Valeant Pharm. Int'l Sec. Litig.*, 2020 U.S. Dist. LEXIS 103675, at *43 (D.N.J. June 15, 2020) (citing *In re American Family Enters.*, 256 B.R. 377, 418 (D.N.J. 2000).

In sum, "[t]he central concern in reviewing a proposed class-action settlement is that it be fair, reasonable, and adequate." Advisory Committee Notes to 2018 Amendments (324 F.R.D. at 918). Later, in *Prudential*, the Third Circuit held that, because of "a sea-change in the nature of class actions," it might be useful to expand the *Girsh* factors to include:

[1] the maturity of the underlying substantive issues, as measured by experience in adjudicating individual actions, the development of scientific knowledge, the extent of discovery on the merits, and other factors that bear on the ability to assess the probable outcome of a trial on the merits of liability and individual damages; [2] the existence and probable outcome of claims by other classes and subclasses; [3] the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved—or likely to be achieved—for other claimants; [4] whether class or subclass members are accorded the right to opt out of the settlement; [5] whether any provisions for attorneys' fees are reasonable; and [6] whether the procedure for processing individual claims under the settlement is fair and reasonable.

10

148 F.3d at 323. "Unlike the *Girsh* factors, each of which the district court must consider before approving a class settlement, the *Prudential* considerations are just that, prudential." *In re Baby Prods. Antitrust Litig.*, 708 F. 3d 163, 174 (3d Cir. 2013).

Here, Rule 23(e)(2), as well as the *Girsh* and (where appropriate) *Prudential* factors, clearly favor final approval of this Settlement.

### 1.    The Rule 23(e)(2) Factors Are Satisfied.

Each of the Rule 23(e)(2) factors is satisfied here, so a finding that they are "likely" to be satisfied is elemental.

### a.    Plaintiffs and Plaintiffs' Counsel Adequately Represented the Class.

Rule 23(e)(2)(A) requires the Court to consider whether the "class representatives and class counsel have adequately represented the class." Plaintiffs incorporate by reference their discussion of this element in their brief in support of preliminary approval (ECF 168-1, at 18-19). Moreover, because this factor overlaps significantly with the class certification analysis on adequacy, to avoid duplicative briefing, it is discussed below. *See infra* at §V.A.4.

### b.    The Settlement Resulted from Arm's-Length Negotiations.

Under Rule 23(e)(2)(B), the Court considers whether the Settlement was "negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B). "[T]he involvement of a neutral or court-affiliated mediator or facilitator in those negotiations may bear on

whether they were conducted in a manner that would protect and further the class interests." Fed. R. Civ. P. 23(e)(2), 2018 Adv. Cmt. Notes. Here, as the Court held in granting Preliminary Approval, the Settlement resulted from "serious, informed, non-collusive arm's length negotiations" undertaken in good-faith by counsel for the Parties. As noted above, the Parties' negotiations included mediation and participation of the Hon. Joel Schneider (ret.). *See In re Aetna UCR Litig.*, 2013 WL 4697994, at *11 (D.N.J. Aug. 30, 2013) ("[S]essions with a respected and experienced mediator, gave counsel on both sides ample opportunity to adequately assess the strengths of their respective positions and facilitated serious and informed negotiations."); *Bredbenner v. Liberty Travel, Inc.*, 2011 WL 1344745, at *10 (D.N.J. Apr. 8, 2011) ("Participation of an independent mediator in settlement negotiations virtually insures that the negotiations were conducted at arm's length and without collusion between the parties.").

Throughout every stage of their negotiations, the Parties weighed the strengths and weaknesses of the Class's claims and the Defendant's defenses, including consideration of, among other issues, liability and damages. The Settlement followed an extensive investigation. *See In re Philips/Magnavox TV Litig.*, 2012 WL 1677244, at *11 (D.N.J. May 14, 2012) ("Where this negotiation process follows meaningful discovery, the maturity and correctness of the settlement become all the more apparent."). Indeed, in preliminarily approving the Settlement, this Court

12

found that the parties participated in a full-day of mediation and negotiated the settlement for several months. ECF 175, at 2-3, 11. Foremost in counsel's mind was the benefit of securing a certain resolution now, rather than facing the uncertainties, risks and delays of litigation, including inevitable years of appeals even if Plaintiffs were able to secure a favorable jury verdict.

Moreover, Class Counsel consist of firms with extensive experience in prosecuting complex consumer class actions including data breaches in this District and around the country, see ECF 168-3, Exhs. 3, 4 (firm resumes), and were well versed in the strengths and weaknesses of their respective positions. They believe that the Settlement is in the best interests of the Class. Counsel's judgment is entitled to considerable weight.3  That the Settlement emerged from protracted, arm's-length negotiations between experienced and well-informed counsel proves that the process by which the Settlement was reached was fair and not the product of collusion.4 The

---

3 *See Varacallo v. Mass Mut. Life Ins. Co.*, 226 F.R.D. 207, 240 (D.N.J. 2005) ("Class Counsel's approval of the Settlement also weighs in favor of the Settlement's fairness."); *In re NASDAQ Mkt.- Makers Antitrust Litig.*, 187 F.R.D. 465, 474 (S.D.N.Y. 1998) (Courts have consistently given "'great weight' . . . to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation.").

4 *See, e.g.*, *Glaberson v. Comcast Corp.*, 2014 WL 7008539, at *4 (E.D. Pa. Dec. 12, 2014) (a settlement is presumed to be fair "when the negotiations were at arm's length, there was sufficient discovery, and the proponents of the settlement are experienced in similar litigation").

process culminating in the present Settlement strongly supports granting final approval.

> ### c.    The Relief Provided to the Settlement Class is Fair, Reasonable and Adequate.

The Settlement provides substantial benefit to Class Members, delivered through a clear claims process. And while Plaintiffs believe their case is strong, they recognize that litigation is uncertain. Making a compromise of claims in exchange for the Settlement's certain, immediate, and substantial benefits is an unquestionably reasonable choice. Indeed, the Settlement benefits are substantial.[5] Class Counsel, who have collectively served as class counsel in hundreds of actions—and scores of data breach class actions—fully endorse the Settlement as fair, reasonable, and adequate.

Rule 23(e)(2)(C)(i)[6] overlaps significantly with *Girsh* (*e.g.*, factors 1, 4-9); both sets of factors advise the Court to consider the adequacy of the settlement relief

---

[5] The Settlement compares favorably with recently approved data breach class actions in this District. *See, e.g. In re Am. Fin. Resources, Inc. Data Breach Litig.*, 22-cv-1757, ECF No. 81 (D.N.J. Oct. 3, 2024) (approving $2.5 million settlement for data breach); *In re Am. Med. Collection Agency Inc. Customer Data Sec. Breach Litig.*, 19-md-02904, ECF No. 609 (D.N.J. Nov. 3, 2023) (approving $6.3 million for data breach against one of the defendants, CareCentrix).

[6] This factor "balances the 'relief that the settlement is expected to provide to class members against the cost and risk involved in pursuing a litigated outcome.'" *Hall v. Accolade, Inc.*, No. 17-cv-3423, 2019 WL 3996621, at *4 (E.D. Pa. Aug. 23, 2019) (quoting Fed. R. Civ. P. 23 Advisory Committee Notes (Dec. 1, 2018)). Such

given the costs, risks, and delay that trial and appeal would inevitably impose. *Compare* Fed. R. Civ. P. 23(e)(2)(C)(i), *with Girsh*, 521 F.2d at 157. Thus, the *Girsh* factors, analyzed below, further inform the Rule 23(e)(2)(C)(i) inquiry.

### i.    Continued Litigation Would Be Long, Complex, and Expensive.

The first *Girsh* factor is whether the Settlement avoids a lengthy, complex and expensive continuation of litigation. "This factor captures 'the probable costs, in both time and money, of continued litigation.'" *In re Cendant Corp. Sec. Litig*., 264 F.3d 201, 233-34 (3d Cir. 2001). "Where the complexity, expense, and duration of litigation are significant, the Court will view this factor as favoring settlement." *Bredbenner v. Liberty Travel, Inc*., 2011 WL 1344745, at *11 (D.N.J. Apr. 8, 2011).

Here, due to the factual and legal complexities involved in this case, continued litigation necessarily would be expensive and time-consuming. Absent a settlement, the Parties would have engaged in substantial factual and expert discovery around the country as well as significant motion practice. Trial would involve extensive pretrial motions involving complex questions of law and fact, and the trial itself would be lengthy and complicated, and the result is uncertain. *See id.*; *see also*

---

analysis "cannot be done with arithmetic accuracy, but it can provide a benchmark for comparison with the settlement figure." *Id.* (internal quotation omitted).

Declaration of James E. Cecchi ("Cecchi Decl.") at ¶ 6. This favors the settlement of the litigation.[7]

Even if Plaintiffs were successful, the result could potentially be less than the very significant benefits afforded by this Settlement, and the Defendants would undoubtedly appeal an adverse judgment, adding further time to a final resolution of this matter if it were litigated. Furthermore, this Court has recognized that "continuing litigation sometimes presents plaintiffs with the risk of losing class certification and any substantial trial award, so a settlement which provides immediate and definite relief is preferable to the prospect of receiving no relief at all." *Martina v. L.A. Fitness Int'l, LLC*, 2013 WL 5567157, at *6 (D.N.J. Oct. 8, 2013). Because a private resolution of the conflict "reduces expenses and avoids delay," this factor weighs heavily in favor of approving the Settlement. *McDonough v. Toys R Us, Inc.*, 80 F. Supp. 3d 626, 640 (E.D. Pa. 2015).

---

[7] *See In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 536 (3d Cir. 2004) ("*Warfarin Sodium*") (finding the first *Girsh* factor to weigh in favor of settlement after three years of litigation). Post-trial motions and appeal would further delay resolution and increase costs. *Id.* ("[I]t was inevitable that post-trial motions and appeals would not only further prolong the litigation but also reduce the value of any recovery to the class."); *In re Merck & Co., Vytorin ERISA Litig.*, 2010 WL 547613, at *7 (D.N.J. Feb. 9, 2010) (noting delayed recovery for the class after trial weighs in favor of settlement).

### ii.     The Reaction of the Class to the Settlement

The second *Girsh* factor "attempts to gauge whether members of the class support the Settlement." *In re Prudential Ins. Co. of Am. Sales Prac. Litig.*, 148 F.3d at 318. Generally, "silence constitutes tacit consent to the agreement." *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 812 (3d Cir. 1995). A "paucity of protestors . . . militates in favor of the settlement." *See Bell Atl. Corp, v. Bolger*, 2 F.3d 1304, 1314 (3d Cir. 1993); *see also Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115, 119 (3d Cir. 1990) (objections by 29 members of class comprised of 281 "strongly favors settlement"); *Weiss v. Mercedes-Benz of N. Am., Inc.*, 899 F. Supp. 1301 (D.N.J. 1995) (100 objections out of 30,000 class members weighs in favor of settlement). As set forth above to the extent there is any change, Plaintiffs will address this aspect of the *Girsh* analysis in the reply brief in support of the motion for final approval. ECF 176 ¶ 27. However, as of the date of this submission, no Class Members have objected to the Settlement and only a mere 22 have requested exclusion. Where, as here, the number of opt-outs and objections is low, this Court has determined that the second factor is readily satisfied. *See Oliver v. BMW of N. Am., LLC*, 2021 WL 870662, at *5 (D.N.J. Mar. 8, 2021).

### iii.     The Stage of the Proceedings and the Amount of Discovery Completed Support the Settlement

The third *Girsh* inquiry is "whether Plaintiffs had an 'adequate appreciation of the merits of the case before negotiating' settlement." *In re Wilmington Tr. Sec.*

*Litig.*, 2018 WL 6046452, at *5 (D. Del. Nov. 19, 2018); *GMC Truck*, 55 F.3d at 813. Here, where the parties engaged in significant motion practice, *see McMahon v. Volkswagen Aktiengesellschaft*, No. 22CV01537 (EP) (JSA), 2023 WL 4045156, at *1 (D.N.J. June 16, 2023), Class Counsel was adequately informed of the relative strengths and weaknesses of the case. *See In re Processed Egg Prod. Antitrust Litig.*, 284 F.R.D. 249, 270-71 (E.D. Pa. 2012); *see also Vaccaro v. New Source Energy Partners L.P.*, 2017 WL 6398636, at *5 (S.D.N.Y. Dec. 14, 2017). As held in the Preliminary Approval Order, "[w]hile no discovery was completed, a thorough factual investigation was conducted to facilitate and assess the settlement. Further, the Settlement Agreement contemplates discovery with regard to Defendants' financials. Thus, while this matter is still in its relative infancy, this matter has proceeded far enough along that this factor weigh in favor of settlement." ECF 175, at 17. Given these circumstances, Class Counsel could negotiate an appropriate settlement that balanced the resources, time, and expenses required to litigate through trial with providing immediate and significant benefits to the victims of the breach. *See In re Nat'l Football League Players Concussion Inj. Litig.*, 821 F.3d 410, 438-439 (3d Cir. 2016) ("[C]ounsel had an adequate appreciation of the merits of the case before negotiating.").

### iv.    The risks of establishing liability and damages

The fourth *Girsh* factor examines "the risks of establishing liability." *Girsh*, 521 F.2d at 157. Under this factor, "[b]y evaluating the risks of establishing liability, the district court can examine what the potential rewards (or downside) of litigation might have been had class counsel elected to litigate the claims rather than settle them." *Beneli v. BCA Fin. Servs., Inc.*, 324 F.R.D. 89, 103 (D.N.J. 2018) (quoting *GMC Truck*, 55 F.3d at 814). In considering this factor, the Court has recognized that "[a] trial on the merits always entails considerable risks." *Pro v. Hertz Equip. Rental Corp.,* Civil Action No. 06-3830 (DMC), 2013 U.S. Dist. LEXIS 86995, at *11-12 (D.N.J. June 20, 2013) (quoting *Weiss*, 899 F. Supp. at 1301). And "no matter how confident one may be of the outcome of the litigation, such confidence is often misplaced." *In re Auto. Refinishing Paint Antitrust Litig.*, 617 F. Supp. 2d 336, 343 (E.D. Pa. 2007).

Plaintiffs believe their claims to be meritorious, but with neither class certification nor summary judgment decided yet, it would be unreasonable to assert that no risks exist in proceeding further against Defendants. Should litigation continue, Defendants would assert numerous significant defenses to this action which could bar completely, if not substantially reduce, all or many Settlement Class Members' potential recoveries under the various applicable states' laws. These defenses include statutes of limitation, lack of standing, lack of reliance or causation, "economic loss rule" bars to recovery, lack of recoverable damages and/or

19

"ascertainable loss," and other statutory and common law complete or partial bars to recovery that may be applicable to particular Settlement Class Members' claims. In contrast, the Settlement here provides the Settlement Class with immediate and substantial benefits.

Similarly, the fifth *Girsh* factor "attempts to measure the expected value of litigating the action rather than settling it at the current time.'" *Cendant*, 264 F.3d at 238 (quoting *GMC Truck*, 55 F.3d at 816). The Court looks at the potential damage award if the case were taken to trial against the benefits of immediate settlement. *Prudential*, 148 F.3d at 319. In *Warfarin Sodium*, the trial court found that the risk of establishing damages strongly favored settlement, observing that "[d]amages would likely be established at trial through 'a battle of experts,' with each side presenting its figures to the jury and with no guarantee whom the jury would believe.'" *In re Warfarin Sodium Antitrust Litig*, 212 F.R.D. 231, 256 (D. Del. 2002), *aff'd* 391 F.3d 516, 537 (3d Cir. 2004). Here, in a complex class action like this one, there is no doubt such a battle of experts would occur.

### v. The risks of maintaining the class action through trial and appeal

The sixth *Girsh* factor also supports approving the proposed Settlement. Plaintiffs would need to maintain class certification throughout the length of the suit, and Defendant could challenge certification and move to decertify at any point. *See Prudential*, 148 F.3d at 321; *see also In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491,

506-07 (W.D. Pa. 2003) ("[A]s in any class action, there remains some risk of decertification in the event the Propose[d] Settlement is not approved. While this may not be a particularly weighty factor, on balance it somewhat favors approval of the proposed Settlement."); *Dewey v. VW of Am.*, 728 F. Supp. 2d 546, 585 (D.N.J. 2010) ("the specter of decertification makes settlement an appealing alternative.").

Here, although Plaintiffs believe in their position, it is not without risk. Defendants have maintained that numerous individual factual and legal issues would likely predominate and adversely affect the ability to certify a class in the litigation context, including individual facts and circumstances of each Settlement Class Member's claim; whether and to what extent any Settlement Class Member can establish any entitlement to damages or other relief; and myriad other issues individual to each Settlement Class Member. Defendants further maintain that certification of a nationwide class would also be difficult given the differences in the various state consumer protection and other laws asserted in this action, including differing proof requirements and damages.

However, such issues do not preclude class certification for settlement purposes, since the Court will not be faced with the significant manageability problems of a trial. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *Sullivan*, 667 F.3d at 302-03 ("the concern for manageability that is a central tenet in the certification of a litigation class is removed from the equation" in the case of

a settlement class); *In re Merck & Co., Inc. Vytorin Erisa Litigation*, 2010 WL 547613, *5 (D.N.J. Feb. 9, 2010) (citing *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 519 (3d Cir. 2004)) (manageability concerns that arise in litigation classes are not present in settlement classes); *O'Brien v. Brain Research Labs, LLC*, 2012 WL 3242365, at *9 (D.N.J. Aug. 9, 2012) ("because certification is sought for purposes of settlement and is not contested, the concerns about divergent proofs at trial that underlie the predominance requirement are not present here"); *Beneli v. BCA Financial Services, Inc.*, 324 F.R.D. 89, 96 (D.N.J. 2018) (same).

Further, even if class certification were granted in the litigation context, class certification can always be reviewed or modified before trial, so "the specter of decertification makes settlement an appealing alternative." *O'Brien v. Brain Rsch. Labs, LLC*, 2012 WL 3242365, at *18 (D.N.J. Aug. 9, 2012).

Absent settlement, Plaintiffs face the vagaries of trial and post-trial proceedings, and while Class Counsel are experienced counsel, they understand "the risks surrounding a trial on the merits are always considerable." *Weiss*, 899 F. Supp. at 1301. Defendants would certainly continue to press forward with their defenses through trial. This increases the overall cost of the suit and risks Plaintiffs' overall chance of success. A settlement avoids those issues and provides certainty to the Class and substantial relief now.  Thus, the sixth *Girsh* factor weighs in favor of settlement.

### vi.    The ability of the defendants to withstand a greater judgment

The seventh *Girsh* factor considers "whether the defendants could withstand a judgment for an amount significantly greater than the [s]ettlement." *Cendant*, 264 F.3d at 240. This factor weighs in favor of the Settlement because the primary Defendant—HealthEC—was in a distressed financial position at the time of resolution. In other words, Plaintiffs were able to secure a settlement now with the reality that a larger verdict sustained through trial and appeal could never be collected. *See* Cecchi Decl. at ¶ 11.

### vii.    The Settlement Amount Is Within the Range of Reasonableness in Light of the Best Possible Recovery and Attendant Risks of Litigation.

The eighth and ninth *Girsh* factors—the range of reasonableness of the settlement given the best possible recovery and considering all the attendant risks of litigation—strongly support approval. These factors ask "whether the settlement is reasonable in light of the best possible recovery and the risks the parties would face if the case went to trial." *Prudential*, 148 F.3d at 322. Assessment of a settlement, however, need not be tied to an exact formula. *See Prudential*, 148 F.3d at 322. The Third Circuit has cautioned against demands that a settlement approach the maximum possible recovery, noting that a settlement is, after all, a compromise. *Id.* at 316-17. "In conducting this evaluation, it is recognized that settlement represents a compromise in which the highest hopes for recovery are yielded in exchange for certainty and resolution and [courts should] guard against demanding to[o] large a settlement based on the court's

view of the merits of the litigation." *Castro v. Sanofi Pasteur Inc.*, 2017 WL 4776626, at *6 (D.N.J. Oct. 23, 2017) (citing *Johnson & Johnson*, 900 F. Supp. 2d at 484-85). Accordingly, a settlement may still be within a reasonable range, even though it represents only a fraction of the potential recovery. *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 144 (E.D. Pa. 2000). "[C]lass action settlements are presumptively fair where (1) the settlement negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *See In re Warfarin*, 391 F. 3d at 535 (internal quotation marks omitted).

Here, as the Court held in granting Preliminary Approval, absent settlement, "Plaintiffs will face significant challenges proving damages. Even if Defendants were liable for the improper disclosure of their health information, that disclosure might not have led to any actual damages if the disclosed information was not used to the detriment of Plaintiffs. The settlement provides each class member with at least $25 (which could increase or decrease depending on the number of claims filed), as well as three years of medical data monitoring. For those with actual out-of-pocket losses or lost time, they can achieve an actual recovery of their losses up to a reasonable cap of $5,000. Even if Plaintiffs took this case all the way to trial and prevailed, it is unlikely they would receive much more in damages than what this settlement affords them." ECF 175, at 19-20. In short, the Settlement provides

substantial benefits to the Settlement Class. These benefits, when balanced against the risks and potential benefits of continued litigation that could result in no recovery at all, demonstrates that the Settlement falls well within the range of what is fair, reasonable, and adequate, and clearly merits preliminary approval.

### viii.    The *Prudential* Factors

In addition to the *Girsh* factors, the relevant *Prudential* factors favor approving the Settlement. The *Prudential* factors include: (1) the maturity of the underlying substantive issues; (2) comparison between the results achieved by the settlement with results achieved for other claimants; (3) whether class members were afforded the right to opt out; (4) whether attorney's fees are reasonable; and (5) whether the procedure for processing claims is fair and reasonable. *Prudential II*, 148 F.3d at 323. Not all factors are relevant here. With respect to the first *Prudential* factor, the maturity of the underlying issues, the Plaintiffs conducted significant investigation into this issue, Defendants filed a motion to dismiss, the Parties participated in mediation, and engaged in extensive arms-length negotiations which ultimately led to the Settlement. The *Prudential* factors that relate to the existence of other classes and subclasses are irrelevant here as the Settlement Class encompasses "the approximately 1.67 million individuals reflected on the Class List that were patients of Community Health, Corewell, MD Valuecare, and Beaumont whose personal information and/or protected health information was compromised

in the Incident announced by HealthEC in December 2023." ECF 176, at 3. Settlement Class Members were provided ample opportunity to object or opt-out of the Settlement and were provided clear instructions on how to do so. *See* ECF 176, at 6, 7-8; Settlement Agreement §§ 4.1, 5.1. The procedure for processing individual claims under the Settlement is fair and reasonable, providing for Settlement Class Members to submit claims online or via a paper claim form through the mail, which are then reviewed by a neutral and highly experienced Settlement Claim Administrator, Verita. *Id.* §§ 1.7; 11.1(b); 11.3. As explained in more detail below, the attorneys' fees requested are also fair and reasonable.

> ### d.    Rule 23(e)(2)(C)(ii) – Effectiveness of the "proposed method of distributing relief" and "the method of processing class-member claims."

Under this factor, the Court "scrutinize[s] the method of claims processing to ensure that it facilitates filing legitimate claims" and "should be alert to whether the claims process is unduly demanding." Fed. R. Civ. P. 23 advisory comm.'s notes to 2018 amendment. The method of distributing relief here is robust and effective, providing Class Members with the ability to file claims easily. Settlement Class Members were provided with a Class Notice which contained basic information about the benefits of the Settlement and instructed them to go to the Settlement website, where they can obtain further information, and submit a claim online. Settlement § 1.35. They are also able to submit reimbursement claims through mail.

The claims are reviewed and processed by a highly experienced third party Settlement Claim Administrator, Verita. These procedures all ensure a fair and reasonable claims process. These procedures clearly satisfy this factor. *See Hall*, 2019 WL 3996621, at *5.

### e.    Rule 23(e)(2)(C)(iii) – The terms and timing of any proposed attorney's fee award.

This factor recognizes that "[e]xamination of the attorney-fee provisions may also be valuable in assessing the fairness of the proposed settlement." Fed. R. Civ. P. 23, advisory comm.'s notes to 2018 amendment. As set forth in the contemporaneously filed motion for attorneys' fees and reimbursement of litigation expenses, the requested attorneys' fees are fair, further supporting final approval of the Settlement.

### f.    Rule 23(e)(2)(C)(iv) – Any agreement required to be identified under Rule 23(e)(3).

Rule 23(e)(3) requires settling parties to "file a statement identifying any agreement made in connection with the proposal." There are no agreements other than the Settlement Agreement.

### g.    Rule 23(e)(2)(D): The Settlement treats Class Members equitably to each other.

Rule 23(e)(2)(D) requires the Court to consider whether the "proposal treats class members equitably relative to each other." This ensures there is no "inequitable treatment of some class members vis-à-vis others." Fed. R. Civ. P. 23, Adv. Cmt.

Note. All Class Members are treated equitably; and all similarly situated class members are entitled to the same relief under the Settlement.

While the Settlement does offer each of the Class Representatives—subject to Court approval—a reasonable Service Award of up to $2,500, this recognizes the important contribution these Plaintiffs have made to the prosecution of this action. Because of their efforts and willingness to become involved in this action, thousands of absent Settlement Class Members will receive significant benefits from the Settlement. "[S]ubstantial authority exists for the payment of an incentive award to the named plaintiff." *Smith*, 2007 WL 4191749, at *3 (citing *Varacallo v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 207, 257 (D.N.J. 2005)). In addition, the proposed Service Award is in line with awards that have been approved in this Circuit. *See, e.g.*, *Weissman v. Philip C. Gutworth, P.A.*, 2015 WL 333465, at *4 (D.N.J. Jan. 23, 2015) ($2,500 service award).

## V. THE COURT SHOULD CERTIFY THE PROPOSED CLASS

The Court has already provisionally certified the Class for settlement purposes. ECF Nos. 175 & 176. And nothing has changed to call the Court's prior conclusions regarding the Settlement into question. Plaintiffs briefly address Rule 23(a) and (b) elements below and request that the Court now grant final class certification.

The Supreme Court has long acknowledged the propriety of certifying a class solely for settlement purposes. *See, e.g.*, *Amchem Prods, Inc. v. Windsor*, 521 U.S. 591, 618 (1997). In conducting this task, a court's "dominant concern" is "whether a proposed class has sufficient unity so that the absent members can fairly be bound by the decisions of class representatives." *Id.* at 621. To be certified under Rule 23, a putative class must satisfy, by a preponderance of the evidence, each of the four requirements of Rule 23(a) as well as the requirements of one of the three subsections of Rule 23(b). *See, e.g.*, *Wragg v. Ortiz*, 2020 WL 2745247, at *27 (D.N.J. May 27, 2020). The Rule 23 elements for class certification are satisfied here.

### A.    The Rule 23(a) requirements are satisfied.

#### 1.    Rule 23(a)(1): Numerosity is satisfied.

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "[G]enerally, where the potential number of plaintiffs is likely to exceed forty members, the Rule 23(a) numerosity requirement will be met." *Martinez-Santiago v. Public Storage*, 312 FRD 380, 388 (D.N.J. 2015) (citing *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 595 (3d Cir. 2012)). With over 1.6 million Settlement Class Members, the proposed Settlement Class clearly satisfies the numerosity requirement. *See, e.g.*, *Wragg*, 2020

WL 2745247, at * 27 (numerosity "must be based on common sense") (citation and internal quotation marks omitted).

### 2.    Rule 23(a)(2): Commonality is satisfied

Rule 23(a)(2) requires that there be "questions of law or fact common to the class," and that the class members "have suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350, 369 (2011) (citation omitted and emphasis added). In other words, the class's claims must "depend upon a common contention ... capable of class-wide resolution." *In re Wellbutrin XL Antitrust Litig.*, 282 F.R.D. 126, 137 (E.D. Pa. 2011) (citing *Wal-Mart*, 564 U.S. at 350). "A contention is capable of class-wide resolution if determination of its truth or falsity will resolve an issue that is central to the validity the claims 'in one stroke.'" *Id.* (quoting *Wal-Mart*, 564 U.S. at 350).

The commonality inquiry focuses on the defendant's conduct. *Sullivan v. DB Invs., Inc*, 667 F.3d 273, 297 (3d Cir. 2011) ("commonality is informed by the defendant's conduct as to all class members and any resulting injuries common to all class members"). Not all questions of fact and law need to be common if there are common questions at the heart of the case. *Warfarin*, 391 F.3d at 530 (quotation omitted); *Prudential*, 148 F.3d at 310. "For purposes of Rule 23(a)(2), even a single [common] question will do." *Wal-Mart*, 564 U.S. at 359 (brackets in original; citation omitted).

In provisionally certifying the Settlement Class, this Court appropriately found commonality. *See* ECF No. 175 at 7. The claims of all Class Members involve the same data breach. And the common questions in this case include whether Defendants were negligent in handling Class Member data and adequately protecting their systems from a cyber attack. These issues are at the heart of the case and are enough to satisfy Rule 23(a)(2) for settlement purposes.

### 3.    Rule 23(a)(3): Typicality is satisfied.

Rule 23(a)(3) requires that a representative plaintiff's claims be "typical" of those of other class members. The Third Circuit has explained that "the named plaintiffs' claims must merely be 'typical, in common-sense terms, of the class, thus suggesting that the incentives of the plaintiffs are aligned with those of the class.'" *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 598 (3d Cir. 2009) (citation omitted); *Johnston v. HBO Film Mgmt.*, 265 F.3d 178, 184 (3d Cir. 2001) (citation omitted). Rule 23(a)(3), however, "does not require that all putative class members share identical claims." *HBO*, 265 F.3d at 184 (emphasis added).

Representative claims are "typical" if they are reasonably coextensive with those of absent class members and they need not be identical. Indeed, when it is alleged that the defendant engaged in conduct common to all members of the class, "there is a strong presumption that the claims of the representative parties will be

typical of the absent class members." *In re Merck & Co., Vytorin/Zetia Sec. Litig.*, 2012 WL 4482041, at *4 (D.N.J., Sept. 25, 2012) (citation omitted).

As reflected in the discussion of Rule 23(a)(2), the Class Representatives' claims, and those of the Settlement Class Members, all stem from the same course of conduct and resulting data breach. Typicality, therefore, is established for settlement purposes. *See In re NFL Players Concussion Injury Litig.*, 821 F.3d at 428 (holding typicality met where plaintiffs "seek recovery under the same legal theories for the same wrongful conduct as the [classes] they represent").

### 4.    Rule 23(a)(4): Adequacy is satisfied.

The final requirement of Rule 23(a) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). In the Third Circuit, the relevant inquiries are: (1) whether the named plaintiffs have any interests antagonistic with other class members and (2) whether the named plaintiffs' counsel are qualified, experienced, and able to conduct the proposed litigation. *In re Schering Plough Corp.*, 589 F.3d at 602. The core analysis for the first prong is whether Plaintiffs have interests antagonistic to those of absent members of the Settlement Class. The second prong analyzes the capabilities and performance of Class Counsel based on factors set forth in Rule 23(g). *See Sheinberg v. Sorensen*, 606 F.3d 130, 132 (3d Cir. 2010). The core analysis for the first prong is whether plaintiffs have interests antagonistic to those of the class. The second

32

prong analyzes the capabilities and performance of class counsel based upon factors set forth in Rule 23(g). *See Sheinberg v. Sorensen*, 606 F.3d 130, 132 (3d Cir. 2010). Plaintiffs satisfy both prongs.

First, Plaintiffs have no interests adverse or "antagonistic" to absent Settlement Class Members. Plaintiffs seek to hold Defendants accountable for, among other things, invasion of privacy, negligence, breach of contract, breach of fiduciary duty, and consumer protection violations. Further, Plaintiffs have demonstrated their allegiance by consulting with Class Counsel, collecting documents, reviewing the pleadings, and keeping informed of the litigation's progress. Their interests are aligned with the absent Settlement Class Members.

Second, as discussed more extensively in the firm resumes submitted in support of Plaintiffs' motion for preliminary approval of the settlement, Class Counsel are qualified, experienced, and competent in complex class litigation and have established, successful track records in consumer class cases. *See* ECF 168-3, Exhs. 3, 4 (firm resumes). Accordingly, the adequacy requirement is satisfied. *See also* ECF 168-1, at 18-19.

### 5.    The proposed class is ascertainable.

Although not specified in the text of Rule 23, some courts—including in this District—imply a prerequisite that the proposed class be "ascertainable." *See e.g.*, *Shelton v. Bledsoe*, 775 F.3d 554, 559 (3d Cir. 2015). "The ascertainability inquiry

is two-fold, requiring a plaintiff to show that: (1) the class is 'defined with reference to objective criteria'; and (2) there is 'a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition.'" *Byrd v. Aaron's Inc.*, 784 F.3d 154, 163 (3d Cir. 2015) (citations omitted); *City Select Auto Sales Inc. v. BMW Bank of N. Am. Inc.*, 867 F.3d 434, 439 (3d Cir. 2017).

Here, the Class definition uses objective criteria that make class membership objectively verifiable, and there is a reliable and administratively feasible mechanism through which qualified Settlement Class Members have been identified through Defendants' records. As such, the Settlement Class is plainly ascertainable.

**B.    As required by Rule 23(b)(3), common issues predominate and class adjudication is superior to individualized litigation.**

Under Rule 23(b)(3), a class should be certified when the court finds that common questions of law or fact predominate over individual issues and a class action would be superior to other methods of resolving the controversy. The predominance element "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods, Inc.*, 521 U.S. at 623. At its core, "[p]redominance is a question of efficiency." *Butler v. Sears, Roebuck & Co.*, 702 F.3d 359, 362 (7th Cir. 2012). The superiority component requires the court "to balance, in terms of fairness and efficiency, the merits of a class action against

those of alternative methods' of adjudication." *Prudential*, 148 F.3d at 316 (citation omitted). Here, the Class readily meets both requirements.

The predominance inquiry focuses on liability issues. *See, e.g.*, *In re Novo Nordisk Sec. Litig.*, 2020 WL 502176, at *8 (D.N.J. Jan. 31, 2020) ("In determining whether common questions predominate, courts have focused on the claims of liability against defendants.") (citing cases). The common questions discussed above with respect to the Rule 23(a)(2) commonality element are overarching. Because the Settlement Class Members allege the same course of conduct and related claims associated with the breach, predominance is satisfied for settlement purposes.

Second, certification of the Class under Rule 23 is "superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R Civ. P. 23(b)(3). The Settlement affords benefits to Class Members who, absent a class settlement, may not have been aware of their legal rights or had too little an incentive to pursue an individual suit. Given the relatively low monetary amount of the individual claims, many would likely result is "negative value" claims. And "negative value" claims—"meaning it costs more to litigate than you would get if you won," *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 675 n.7 (2010) (citation and internal quotation marks omitted)—are typically "the most compelling rationale for finding superiority" of class treatment. *Reap v. Cont'l Cas.*

35

*Co.*, 199 F.R.D. 536, 550 (D.N.J. 2001) (citation and internal quotation marks omitted).

Indeed, Class Counsel have already devoted significant time and resources to this litigation. It is inconceivable that an individual data breach victim pursuing a purely economic loss case could or would invest the same resources. *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004) ("[O]nly a lunatic or a fanatic sues for $30.").

Certification also serves the interest of judicial economy by avoiding multiple similar lawsuits and simultaneously resolves claims over one million individuals in one proceeding. Even a few duplicative individual suits would needlessly burden the courts and risk inconsistent adjudications. *See In re Neurontin Antitrust Litig.*, 2011 WL 286118, at *11 (D.N.J. Jan. 25, 2011) ("The class action mechanism . . . avoids the specter of inconsistent adjudications.") (citation and internal quotation marks omitted).

Thus, class action treatment is far superior to individual adjudication. Because this is a class certified only for settlement purposes, manageability concerns associated with a litigation class are also irrelevant. *Amchem Prods, Inc.*, 521 U.S. at 620. And the Court found the superiority requirement satisfied for certification of the Settlement Class. ECF No. 175 at 13.

### C.    Proposed Class Counsel satisfy Rule 23(g).

Under Rule 23(g), a court that certifies a class must appoint class counsel who is charged with fairly and adequately representing the interests of the Class. *See* Fed. R. Civ. P. 23(g). Rule 23(g) focuses on the qualifications of class counsel, complementing the requirement of Rule 23(a)(4) that the representative parties adequately represent the interests of the class members. *See Sheinberg v. Sorensen*, 606 F.3d 130, 132–33 (3d Cir. 2010) ("Although questions concerning the adequacy of class counsel were traditionally analyzed under the aegis of the adequate representation requirement of Rule 23(a)(4) of the Federal Rules of Civil Procedure, those questions have, since 2003, been governed by Rule 23(g)."). Although a court may consider any factor concerning the proposed class counsel's ability to "fairly and adequately represent the interest of the class," Rule 23(g) specifically instructs a court to consider:

> (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class.

Fed R. Civ. P. 23(g)(1)(A).

Here, the Court has already found that each firm satisfied Rule 23(g) and appointed the law firms of Carella, Byrne, Cecchi, Brody & Agnello, P.C.; and Stueve Siegel Hanson LLP, collectively, as Class Counsel for the Settlement Class. ECF No. 175, at 10-12. Exactly the same considerations, extensive efforts, and in-

37

depth knowledge of the subject area that previously supported appointment weigh strongly in favor of finding Class Counsel adequate once again.

## VI.    THE REQUESTED ATTORNEYS' FEES AND EXPENSES ARE REASONABLE AND SHOULD BE APPROVED.

Class Counsel seek a combined total of $1,864,050 in attorneys' fees plus costs, and expenses. Class Counsel also seek a $2,500 service award for each of the 13 named Class Representatives. In total, this amounts to $17,500.

Class Counsel are filing simultaneously with this motion their Motion for Award of Attorneys' Fees and Costs and supporting memorandum. Plaintiffs incorporate by reference this Fee Motion. In sum, Plaintiffs' Fee Motion establishes the reasonability of the fee and expense request based on the size of the recovery and the number of persons benefitted; the skill and efficiency of Class Counsel; the complexity and duration of the litigation; the risk of non-payment; the significant time that Plaintiffs' Counsel devoted to the case; awards in similar cases; the percentage fee that would have been negotiated had the case been subject to a private contingent fee agreement; the lodestar cross-check; and the lack of objections to the fee requests.

And the requested fees, if awarded, would only result in a modest multiplier, which is well within the range of multipliers awarded around the country and within the Third Circuit in analogous cases. *See, e.g.*, *In re Merry–Go–Round Enters.*, 244 B.R. 327 (Bankr. D. Md. 2000) (40% award for $71 million fund awarded, resulting

in cross-check multiplier of 19.6); *New England Carpenters Health Benefits Fund v. First Databank, Inc.*, 2009 WL 2408560, at \*2 (D. Mass. Aug. 3, 2009) (approving multiplier of 8.3 and 20% fee); *In re Rite Aid Corp. Sec. Litig.,* 146 F. Supp. 2d 706, 736 n.44 (E.D. Pa. 2001) (fee of 25% of $193 million fund, which amounted to $48 million and represented a multiplier of 4.5–8.5, which court described as "handsome but unquestionably reasonable"); *In re Rite Aid Corp. Sec. Litig.*, 362 F. Supp. 2d 587 (E.D. Pa. 2005) (25% of $126,800,000 fund awarded; multiplier of 6.96); *Weiss*, 899 F. Supp. at 1304 (fee resulted in multiplier of 9.3 times hourly rate), *aff'd*, 66 F.3d 314 (3d Cir. 1995).

Thus, controlling and persuasive jurisprudence demonstrates the reasonability of the fee requested here. The Court should grant Class Counsel's fee and expense reimbursement request.

## VII. THE COURT SHOULD APPROVE CLASS REPRESENTATIVE SERVICE AWARDS

Service awards for class representatives promote the public policy of encouraging individuals to undertake the responsibility of representative lawsuits. The efforts of the Class Representatives were instrumental in achieving the Settlement on behalf of the Class and justify the awards requested here. The Class Representatives came forward to prosecute this litigation to benefit the Class as a whole. They sought successfully to remedy a widespread wrong and have conferred valuable benefits upon their fellow Class Members. The Class Representatives

39

provided a valuable service to the class by: (i) providing information and input in connection with the drafting of the complaints; (ii) overseeing the prosecution of the litigation; (iii) consulting with counsel during the litigation; and (iv) offering advice and direction at critical junctures, including the Settlement of the litigation.

A $2,500 service award for each of the Class Representatives recognizing their services to the Class is modest under the circumstances, and well in line with awards approved by federal courts in New Jersey and elsewhere. *Bernhard v. TD Bank, N.A.*, 2009 WL 3233541, at *2 (D.N.J. 2009) ("[C]ourts routinely approve incentive awards to compensate named plaintiffs for services they provided and the risks they incurred during the course of the class action litigation.") (quoting *Cullen*, 197 F.R.D. at145).  The notice advised Class Members that Class Counsel would ask the Court to award each of the Class Representatives up to $2,500 for their work in the litigation, and no Class Member has yet objected. Plaintiffs and Class Counsel respectfully request that the service awards be approved.

## VIII. CONCLUSION

For all these reasons, the Court should enter an Order: (1) granting final approval of the Settlement set forth in the Settlement Agreement (the "SA"); (ii) certifying the Settlement Class for settlement purposes only; (iii) granting final appointment of Plaintiffs Allan Bishop, Caroline Cappas, Jessica Fenn, Keith Fielder, Joni Fielder, Gregory Leeb, and Mindy Markowitz as Settlement Class

Representatives and the law firms of Carella, Byrne, Cecchi, Brody & Agnello, P.C. and Stueve Siegel Hanson LLP as Settlement Class Counsel; (iv) appointing Verita as Settlement Claim Administrator; and (v) entering a final judgment dismissing the action with prejudice.

Dated: December 8, 2025

Respectfully submitted,

**CARELLA, BYRNE, CECCHI, BRODY & AGNELLO, P.C.**

s/ *James E. Cecchi*

James E. Cecchi
5 Becker Farm Road
Roseland, New Jersey 07068
Telephone: (973) 994-1700
jcecchi@carellabyrne.com


Norman E. Siegel
**STUEVE SIEGEL HANSON LLP**
460 Nichols Road, Suite 200
Kansas City, MO 64112
816-714-7112
siegel@stuevesiegel.com


*Settlement Class Counsel*